IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELBERTA BERNICE LIEBERMAN,  )
                             )
            Plaintiff,       )
                             )
    v.                       )     C.A. No. 96-523-GMS
                             )
THE STATE OF DELAWARE,       )
THE FAMILY COURT OF THE      )
STATE OF DELAWARE            )
                             )
            Defendants.      )


**PLAINTIFF ELBERTA BERNICE LIEBERMAN'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**


MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
Attorneys for Plaintiff
Elberta Bernice Lieberman
emcnally@morrisjames.com


Dated: April 4, 2005

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ............................ 1

SUMMARY OF ARGUMENT ....................................................................... 3

STATEMENT OF FACTS ............................................................................ 5

      1.    Background Relating To Lieberman's Disability ........................................ 5

      2.    Facts Concerning Federal Funding ..................................................... 7

ARGUMENT ......................................................................................... 10

I.     SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE IS
      A DISPUTE AS TO THE MATERIAL FACT OF WHETHER THE
      FAMILY COURT IS A RECIPIENT OF FEDERAL FUNDS ............................ 10

      A.    Standard for Summary Judgment ................................................. 10

      B.    Evidence Obtained During Discovery Indicates That The Family
            Court Has Been The Recipient Of Federal Funds .............................. 11

II.    BECAUSE THE FEDERAL GOVERNMENT DID NOT RECEIVE GOODS
      OR SERVICES IN EXCHANGE FOR THE MONEY IT GAVE THE STATE,
      THE MONEY FROM THE FEDERAL GOVERNMENT QUALIFIES AS
      FEDERAL FUNDING UNDER THE TERMS OF THE
      REHABILITATION ACT ..................................................................... 13

III.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE STATE
      HAS ADMITTED TO DESTROYING DOCUMENTS AFTER THE
      INITIATION OF THE LITIGATION THAT COULD HAVE PROVEN
      FEDERAL FUNDING ........................................................................ 16

CONCLUSION ....................................................................................... 18

i

TABLE OF AUTHORITIES

Case                       Page

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...................................................................10

*Bowers v. National Collegiate Athletic Association*,
 9 F. Supp. 2d 460 (D.N.J. 1998) .....................................12

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ...................................................................10

*Elberta Bernice Lieberman v. State of Delaware*,
 2003 WL 21658273 (3d Cir. July 14, 2003)..........................2

*Hodges v. Thompson*,
 311 F.3d 316 (4th Cir. 2002) ............................................14

*In re Wechsler*,
 121 F. Supp.2d 404 (D. Del. 2000)..................................16

*Koslow v. Commonwealth of Pennsylvania*,
 302 F.3d 161 (3d Cir. 2002)...............................................11

*Mass v. Martin Marietta Corp.*,
 805 F. Supp. 1530 (D. Colo. 1992)..........................13, 14, 15

*Nathanson v. Medical College of Pennsylvania*,
 926 F.2d 1368 (3d Cir.1991)................................................11

*Nolley v. County of Erie*,
 776 F. Supp. 715 (W.D.N.Y. 1991) .........................13, 14, 15

*Positran Mfg., Inc. v. Diebold, Inc.*,
 2003 WL 21104954 (D. Del. May 15, 2003)....................16, 17

*R.M. Smith v. National Collegiate Athletic Association*,
 266 F.3d 152 (3d Cir. 2001)...............................................12

*Schmid v. Milwaukee Elec. Tool Corp.*,
 13 F.3d 76 (3d Cir.1994).....................................................16

*Strathie v. Department of Transp.*,
 716 F.2d 227 (3d Cir.1983)................................................11

*Tennessee v. Lane,*
    541 U.S. 509, 124 S.Ct. 1978 (2004) .................................................1

*Thiele v. Oddy's Auto & Marine, Inc.,*
    906 F. Supp. 158 (W.D.N.Y. 1995) ..............................................16

*Wagner by Wagner v. Fair Acres Geriatric Center,*
    49 F.3d 1002 (3d Cir. 1995)...........................................................11

*Wright v. Columbia University,*
    520 F. Supp. 789 (E.D. Pa. 1981) .................................................12


Statutes and Other Authorities

Fed. R. Civ. P. 56 (c) .........................................................................10

42 U.S.C. § 12101 *et seq*......................................................................1

29 U.S.C. § 701 *et seq*..........................................................................1

42 U.S.C. §§ 651-669 .......................................................................7, 14

42 U.S.C. § 654.................................................................................14

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

This is an action arising out of the forced retirement of the plaintiff Elberta Bernice Lieberman ("Lieberman") by defendants Family Court of the State of Delaware and the State of Delaware (collectively the "State"). On October 31, 1996, Elberta Bernice Lieberman initiated this lawsuit, *pro se*, against the State of Delaware and the Family Court of the State of Delaware ("the State") claiming the State illegally discriminated against her on the basis of her disabilities in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). While this case was filed in 1996, it really became active when counsel was appointed for Lieberman and she filed an Amended Complaint on May 17, 2001 (D.I. 42).

The Amended Complaint alleged that the State had: (1) violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* (the "ADA Claim"), (2) violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq* (the "Rehabilitation Act Claim"), and (3) retaliated against Lieberman for filing her ADA and Rehabilitation Act Claims. (D.I. 42.)

The State then filed a motion to dismiss the Amended Complaint on May 23, 2001 (D.I. 43). After briefing, this Court on, August 30, 2001, issued its Memorandum and Order (D.I. 48) (the "Opinion"). The Opinion dismissed the ADA Claim, but sustained the Rehabilitation Act Claim, holding that the State had Eleventh Amendment immunity for the ADA Claim but not for the Rehabilitation Act Claim.[1] The State

---

[1]     Recently, the Supreme Court has clarified the law of Eleventh Amendment immunity under the ADA and, as a result, Lieberman is considering asking the Court to revisit its holding dismissing the ADA Claim. *See Tennessee v. Lane,* 541 U.S. 509, 124 S. Ct. 1978 (2004).

promptly appealed to the United States Court of Appeals for the Third Circuit (D.I. 49).

On July 14, 2003, the Third Circuit affirmed this "Court's thoughtful determination"

upholding the Rehabilitation Act Claim.[2]  The State's Petition for Rehearing *en banc* was

denied on August 22, 2003 (D.I. 53), and discovery commenced in this Court.

On February 10, 2005, the parties entered into a Scheduling Order at the request

of the Court.  In accordance with the Scheduling Order, the State filed its Motion for

Summary Judgment and Opening Brief (D.I. 79).[3]  The State makes one primary

argument: that the State did not receive federal funds so as to waive its Eleventh

Amendment immunity.

This is Lieberman's answering brief in opposition to the State's Motion for

Summary Judgment.

---

[2]      *Elberta Bernice Lieberman v. State of Delaware*, No. 01-3540, 2003 WL 21658273, at *2
(3d Cir. July 14, 2003) (D.I. 51).

[3]      Defendant's Opening Brief for Summary Judgment for Lack of Jurisdiction (D.I.
79) shall be cited to herein as "OB."

## SUMMARY OF ARGUMENT

1.      Summary judgment is inappropriate because there is a genuine issue of material fact as to whether the Family Court received federal funding.  Although the State makes the conclusory statement that the Family Court does not receive federal funding, the evidence shows the opposite to be true.  The State's own Rule 30(b)(6) witness testified that the Family Court receives federal funding from the Division of Child Support Enforcement, which in turn receives funding directly from the federal government pursuant to Title IV-D of the Social Security Act.  Case law in the Third Circuit indicates that indirect federal funding (ie. one department giving another federal money) is sufficient to qualify as federal funding under the Rehabilitation Act.

2.      The State also makes the argument that the federal funding at issue in this case was actually for goods and services and, thus, is not true federal assistance.  The State completely misapplies the case law on this issue.  If the federal government receives goods or services from another party in exchange for money, that is not federal funding for Rehabilitation Act purposes.  For example, if the federal government enters into a contract with another party and the federal government gives a contracting party a certain amount of money as consideration for services, the contracting party is not receiving federal "assistance" in the sense of a grant.  However, the federal government did not receive either goods or services from the Division of Child Support Enforcement or from the Family Court in exchange for the money it gave the State pursuant to Title IV-D of the Social Security Act.  Therefore, the Family Court did receive federal funding, and the state waived its Eleventh Amendment immunity.

3.      Bernice Lieberman initiated this law suit in 1996.  Discovery indicates that there would have been additional evidence showing the federal funding going to the Family Court during 1993-94.  Unfortunately, after the initiation of Lieberman's law suit, the County continued to destroy documents relevant to the litigation pursuant to its document retention policy.  Because this unwarranted destruction of evidence prevented Lieberman's access to the very documents that would further prove federal funding, Lieberman is entitled to an adverse inference instruction that will allow the trier of fact to assume the destroyed documents would have shown evidence unfavorable to the State. Such an instruction precludes summary judgment on the federal funding issue.

## STATEMENT OF FACTS

1.    Background Relating To Lieberman's Disability

Bernice Lieberman graduated from the University of Delaware in 1968, with a Bachelors Degree in Psychology. She then sought to continue her education with post-graduate work, but eventually withdrew because of lack of funds. After several years working at the Delaware State Hospital and Terry Children's Psychiatric Center in various roles using her psychology training, in 1974 Lieberman began her twenty-year career with the Family Court of the State of Delaware.[4]

In her early years at Family Court, Lieberman steadily advanced. She started as a counselor, meeting with juveniles and their parents, doing pre-sentence reports and other related work. By 1977 she was the Coordinator of Referral Services for Juvenile Delinquents, working as a liaison with community groups and the Family Court. In 1978 she was chosen to co-write a major grant proposal for a three-year federally-funded restitution program for juvenile offenders and she then became the Restitution Project Coordinator for that project, supervising five counselors and other staff and making sure that the Project was being used statewide according to the federal grant's requirements.

Nonetheless, throughout this period Lieberman suffered from mental illness. Starting in 1981 after Family Court lost a three year grant that Lieberman had worked hard to bring to the Court, she several times was hospitalized and took temporary leaves of absence for her disability, all approved by the Family Court and the State. She also had some physical illnesses, such as breast cancer, from which she recovered in time. But despite these illnesses, Lieberman consistently was given positive evaluations and merit pay raises, except for one year, and was able to perform her work. (Lieberman

---

[4]    The facts set forth here are verified and supported by the Lieberman Affidavit (D.I. 68)

Aff., Ex. G).

In 1987, Lieberman's illnesses required her to step back in her career and take a less demanding job, first as an investigative services officer and then as a mediation/arbitration officer for the Family Court. While she continued her treatment for mental illness, she also was able to perform her job well enough to earn positive job reviews and raises.

Through the summer of 1993 Lieberman continued to perform mediations as she struggled to cope with her illnesses. On November 17, 1993, she received a memorandum from Kathleen Donofrio, her supervisor, that was shared with Ms. Ana DePaul and Court Administrators, Mr. Pollard and Mr. Williams. The Family Court agreed that if Ms. Lieberman heard the same number of cases as the other mediators, she might use flextime to offset the time missed per week due to psychiatric appointments. She complied with this plan. However, the Family Court did not give Lieberman the agreed-upon job restructuring accommodations and required her to use her sick time to cover the time spent on her therapy.

In January 1994, on the recommendation of the Delaware Department of Labor, Lieberman was evaluated by Lynn Erb, Ph.D., a learning disabilities specialist. Dr. Erb's 1994 evaluation of Lieberman concluded that she "certainly has the writing ability and verbal ability to perform her job well." Dr. Erb provided an evaluation that listed the accommodations related to Ms. Lieberman's attention deficit hyperactivity disorder that would permit her to perform her work. Randall E. Williams, after reviewing Dr. Erb's recommendations, agreed that the Family Court should explore job accommodations that would permit Lieberman to perform her work at the Family Court. In August, 1994,

Lieberman advised Ms. Donofrio that the accommodations that she had been promised were not taking place and that she needed those accommodations to be able to complete her work in a timely fashion.  More specifically, she needed one and one-half hours a week after hours to be able to do paperwork to make up for the hour and one-half she requested to attend psychotherapy with Dr. Stehle.

Notwithstanding that she was basically up to date with her mediations and other responsibilities, on October 28, 1994, Lieberman was advised that she been recommended for dismissal.  The grounds for that recommendation were not accurate because she was up to date with her work and had additional medical leave.

After she was forcibly escorted from the Family Court, Lieberman's mental illness overcame her and she was hospitalized.  Her treating physician attributed this increase in the severity of her illness to the loss of her job at Family Court, a job that was central to her sense of personal worth.  (Lieberman Aff., Ex. H).  Had she been accommodated by Family Court in 1993 and 1994, she would not have become seriously ill and could have performed her job.

2.     Facts Concerning Federal Funding

The State concedes that the Division of Child Support Enforcement ("DCSE") receives money from the federal government pursuant to appropriations in Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669.  (OB at 8 & n.2.)  In fact, from 1993-1994 period, it appears that Family Court was receiving federal funding for the very areas where Lieberman worked.  Starting at least by 1991, the State sought federal funding from the federal Division of Child Support Enforcement (the "DCSE").  (Lieberman Aff., Exs. A-B).  Thus, in 1993-1994 Ms. Lieberman was required to report on how she

handled these IV-D Claims, apparently to justify the federal funding the Court had

received by that time.  (Lieberman Aff. ¶ 3).

The evidence, however, does not end with the observations of Ms. Lieberman.

During her Rule 30(b)(6) deposition, the Family Court's Director of Fiscal Services,

Karen Disch, confirmed that the Family Court indirectly received money from the federal

government.  The following questions and answers undeniably confirm that the Family

Court indirectly received federal funding:

> Q.     I guess I'm trying to figure out, let me see, the Division of Child
> Support Enforcement you say reimburses Family Court for expenses,
> correct?
>
> A.     Yes.
>
> Q.     And then they send you a check?
>
> A.     Basically, yes.  They deposit the funds, yes.
>
> Q.     Now, do you know where the Division of Child Support
> Enforcement gets its funds that are used to pay the bills of Family Court?
>
> A.     I, from what I've been told, it is federal funds.
>
> Q.     And so as far as you know, that was the system that existed in '93
> and '94 as well?
>
> A.     Yes.

(Disch Dep. at 8:9-23).[5]

Later in her Deposition, Disch explained that the Family Court's bills are

essentially "split 75 percent general fund and 25 percent ASF, appropriated special

funds." (*Id.* at 17:3-5.)  Furthermore, the salary for some Family Court positions is

"allocated to appropriated special funds." (*Id.* at 17:9-10.)  The appropriated special

funds came from the Division of Child Support. (*Id.* at 17:14-20.)  Disch again

---

[5]     The deposition of Disch is attached as Exhibit A of the Affidavit of Edward M. McNally.

confirmed that some of the DCSE's money came from the federal government. (*Id.* at 20:12-15.)

Moreover, the State produced certain documents that confirm that the Family Court was receiving money from the federal government. For example, an Administrative Plan shows the interaction between the Family Court and the DCSE in the area of Title IV-D services. (Disch Dep., Ex. 2.) The plan provides how the Family Court will receive funds for its Title IV-D activities. (*Id.* at Bates 001332-1336.) The Administrative Plan specifically provides for the transfer of funds from the DCSE to the Family Court after the Family Court submits its bill. (*Id.* at Bates 001333.) Significantly, the transfer of money from DCSE to the Family does not take place until "after receipt of funds from the Federal Government.)" (*Id.* at Bates 001333.)

Another document, the Narrative Cost Allocation Methodology for Child Support Activities provided by the Delaware Family Court, also specifically indicates that "Child Support activities provided by the Family Court are reimbursed through the Department of Health and Social Services by Federal Title IV-D funding." (Disch Dep., Ex. 3 at Bates 001301; *see also* Disch Dep., Ex. 4 at Bates 001291 (requiring Family Court to "comply with 45 CFR 303.107 relative to Federal Financial Participation").) Furthermore, budgets show that money was appropriated to the Family Court from appropriated special funds. For example, in the fiscal year ending June 30, 1994, the Family Court had been appropriated over $2 million dollars. (Disch Dep., Ex. 5 at Bates 001272.) When looking at this document during her deposition, Disch confirmed that the Family Court received this money from DCSE, and that DCSE received money from the federal government. (Disch Dep. 27:8-16.)

## ARGUMENT

I.    **SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE IS A
      DISPUTE AS TO THE MATERIAL FACT OF WHETHER THE FAMILY
      COURT IS A RECIPIENT OF FEDERAL FUNDS**

      A.    **Standard For Summary Judgment**

      Summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party

bears the burden of "identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the burden

shifts to the non-moving party to produce specific facts that show that there is a genuine

issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However,

"summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.*  In this case, there is just such a dispute as to material fact regarding whether

the Family Court received federal funding.

      The State has failed to meet its burden to show that there is no dispute as to the

material facts.  As the Third Circuit has explained:

> In order to establish a violation of the Rehabilitation Act, a plaintiff must
> prove (1) that he is a "handicapped individual" under the Act, (2) that he is
> "otherwise qualified" for the position sought, (3) that he was excluded
> from the position sought "solely by reason of his handicap," and (4) *that*
> *the program or activity in question receives federal financial assistance.*

*Wagner by Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1009 (3d Cir. 1995)

(emphasis supplied) (citing *Strathie v. Department of Transp.,* 716 F.2d 227 (3d

Cir.1983); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d

Cir.1991)).  At this stage of the proceedings, the State argues that there is no evidence to

support the federal funding element of Lieberman's Rehabilitation Act claim.  (OB at 8.)

In fact, in stark contrast to the State's conclusory statements to the contrary, the evidence

obtained during discovery actually shows that the Family Court did receive federal

funding.  Because there is sufficient evidence for a jury to return a verdict in favor of

Lieberman on the federal funding issue, the State's motion for summary judgment should

be denied.  *See Anderson*, 477 U.S. at 249.

> **B.**     **Evidence Obtained During Discovery Indicates That The Family
> Court Has Been The Recipient Of Federal Funds**

"[I]f a state accepts federal funds for a specific department or agency, it

voluntarily waives sovereign immunity for Rehabilitation Act claims against the

department or agency, but only against that department or agency." *Koslow v.*

*Commonwealth of Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002).  It is undisputable

that the DCSE received federal funding as a Title IV-D Agency and that the Family Court

was funded, in part, by DCSE.  (*See* Disch Dep. at 8:9-20; Disch Dep., Ex. 2 at Bates

001332-1336; Disch Dep., Ex. 3 at Bates 001301; Disch Dep., Ex. 4 at Bates 1291 ).

Furthermore, according to Disch this is the same system that existed in 1993-94.  (Disch

Dep. at 8:9-20.)  Therefore, the Family Court was receiving indirect federal funding in

1993-94.

A state agency's acceptance of indirect federal funding is sufficient to waive the

state's Eleventh Amendment immunity from Rehabilitation Act Claims as to that

agency's activities.  First, under the regulations promulgated under the Regulation Act a "recipient" of federal funding "means any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financing assistance is extended *directly or through another recipient* . . . ."  45 C.F.R. 84.3(f) (emphasis supplied); *see also* 45 C.F.R. 104.3(f).  Thus, that the Family Court's federal funding was first received by DCSE does not affect the Family Court's status as a recipient.

Second, decisions that have addressed this issue (and that the State ignores in its brief) have concluded indirect federal funding is sufficient to support Rehabilitation Act claims.  *See, e.g.*, *Wright v. Columbia University*, 520 F. Supp. 789, 791 (E.D. Pa. 1981) (citing 45 C.F.R. 84.3(f) and rejecting the defendant's argument that Eleventh Amendment immunity had not been waived because the federal funding was indirect); *Bowers v. National Collegiate Athletic Association*, 9 F. Supp. 2d 460, 493-94 (D.N.J. 1998) (applying similar provisions of Title IX and denying motion for summary judgment because there were genuine issues of material fact as to whether the NCAA received indirect federal funding from another organization).  Indeed, interpreting a similar provision in Title IX, the Third Circuit has found that "an entity may receive federal financial assistance indirectly and still be considered a recipient . . . ."  *R.M. Smith v. National Collegiate Athletic Association*, 266 F.3d 152, 161 (3d Cir. 2001).

II.  **BECAUSE THE FEDERAL GOVERNMENT DID NOT RECEIVE GOODS OR SERVICES IN EXCHANGE FOR THE MONEY IT GAVE THE FAMILY COURT, THE MONEY FROM THE FEDERAL GOVERNMENT QUALIFIES AS FEDERAL FUNDING UNDER THE TERMS OF THE REHABILITATION ACT**

The State next argues that the Family Court is not receiving federal funding because the money paid to DCSE, and then transferred to the Family Court, is actually money for services rendered.  According to the state, when money is offered by the federal government for "goods and services" it is not federal funding issued under the Rehabilitation Act.  (OB 8 n.3.)  Although this is generally a correct statement of law, the State's discussion of the concept is so cursory and incomplete that it leaves the impression of a rule of law that is much broader than it is in reality.  Furthermore, the exemption of money exchanged for goods and services from being counted as federal funding for Rehabilitation Act purposes is completely inapplicable in this case because the federal government received neither goods nor services from the State.

In support of its argument, the State cites *Mass v. Martin Marietta Corp.*, 805 F. Supp. 1530 (D. Colo. 1992) and *Nolley v. County of Erie*, 776 F. Supp. 715 (W.D.N.Y. 1991).  Both of these cases are factually distinguishable from the instant case.  In *Mass*, a plaintiff argued that a government contractor received federal funding when he received hundreds of millions of dollars from his contracts with the federal government.  805 F. Supp. at 1542.  In support of his argument, the plaintiff relied on cases where hospitals received Medicare and Medicaid money and were found to be the recipients of federal funding.  *Id.*  Distinguishing these cases, the court explained that "[w]hen the government provides Medicare or Medicaid payments to a hospital, it receives no goods or services in return."  *Id.*  In *Mass*, the federal government, as the party contracting with the defendant,

actually did receive good and services.  Therefore, there was no "federal financial assistance."  *Id.*

Similarly, in *Nolley*, a plaintiff argued that the Erie County Holding Center ("ECHC") was receiving federal funds when it housed a federal prisoner.  776 F. Supp. at 742.  The court found that the "[p]ayment of fair market value for services rendered does not constitute a subsidy."  *Id.* at 743.

The instant case is fundamentally distinguishable from *Mass* and *Nolley* because in both of those cases the government was basically acting a participant in the marketplace and receiving goods and/or services for the exchange of money.  In other words, the defendants in *Mass* and *Nolley* were not receiving "assistance" from the federal government in the form of a grant, and the federal government was receiving a tangible benefit for its payment of money.  Under Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669, the federal government receives no such benefit.  Title IV-D acts as a typical federal program that uses federal funding to persuade the state to do its bidding.  Recently, the Fourth Circuit described the hoops a state must jump through to qualify for federal funding under Title IV-D.   According to the Court:

> Currently, as a condition of receipt of any federal funding under Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669, States must have an approved state plan for child and spousal support that meets all the requirements of 42 U.S.C. § 654. Among the prerequisites for approval of a Title IV-D Plan are the requirements that the State establish and operate an automated data processing and information retrieval system, see 42 U.S.C. § 654(24), and a state child support disbursement unit (SDU), see 42 U.S.C. § 654(27)(A). . . .
>
> Without an approved state plan, a State may lose federal funding under . . . Title IV-D . . . .

*Hodges v. Thompson*, 311 F.3d 316, 318 (4th Cir. 2002).  Nothing about Title IV-D

14

creates the type of the type of contract-style exchange of money for services that occurred in either *Mass* or *Nolley*.

### III. SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE STATE HAS ADMITTED TO DESTROYING DOCUMENTS AFTER THE INITIATION OF THIS LITIGATION THAT COULD HAVE PROVEN FEDERAL FUNDING

"A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit." *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D. Del. May 15, 2003). When a party to a case destroys relevant evidence, the decision to impose sanctions and the severity of the sanctions are within the discretion of the trial court. *In re Wechsler*, 121 F. Supp.2d 404, 427 (D. Del. 2000). When determining whether it should sanction the destroyer of evidence, the District of Delaware considers:

> (1) the degree of fault and personal responsibility of the party who destroyed the evidence;
> (2) the degree of prejudice suffered by the other party; and
> (3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future.

*Positran Mfg., Inc.*, 2003 WL 21104954, at *2 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)). When determining the personal responsibility of the party who destroyed the evidence, a court must consider whether there was intent by the transgressor to limit the opposing party's ability to litigate the case. *Id.* Generally, if a party is completely deprived of a chance to examine relevant evidence, sanctions are appropriate. *Id.* at *3 (citing *Thiele v. Oddy's Auto & Marine, Inc.,* 906 F. Supp. 158, 162-63 (W.D.N.Y. 1995)).

In the instant case, Lieberman initiated her lawsuit against the State in 1996. After the initiation of such a suit, the State should have halted the operation of the destruction orders contained in its document retention schedule. (Disch Dep., Ex. 7 at

16

Bates 000861-879.)   Rather than retaining relevant documents as the law requires, the

State destroyed relevant documents.  Deputy Attorney General Marc P. Niedzielski

confirmed at the Disch deposition that the State produced documents to Lieberman

explaining its destruction policies "to show you why we didn't have all the detailed

financial records that we normally would have, because they have been destroyed."

(Disch Dep. at 32:4-7.)  Ms. Disch confirmed that what Mr. Niedzielski said was also her

understanding of the destruction policies.  (*Id.* at 32:9-11.)  Because this destruction took

place after the initiation of Lieberman's case against the State, and because Lieberman

was never able to view the destroyed evidence, Lieberman is entitled to a spoliation

instruction that allows the trier of fact "to assume the destroyed evidence would have

been unfavorable to the offending party."  *Positran Mfg., Inc.*, 2003 WL 21104954, at *4.

An adverse inference instruction on the issue of federal funding certainly precludes

summary judgment.

## **CONCLUSION**

For the reasons set forth in this brief, the State's summary judgment motion

should be denied.


MORRIS, JAMES, HITCHENS & WILLIAMS LLP


Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
Attorneys for Plaintiff
Elberta Bernice Lieberman
emcnally@morrisjames.com

April 4, 2004

## CERTIFICATE OF ELECTRONIC SERVICE

I, Edward M. McNally, hereby certify that on April 4, 2005, I electronically filed

copies of the Plaintiff Elberta Bernice Lieberman's Summary Judgment Answering Brief,

Compendium of Unreported Cases Cited in Plaintiff Elberta Bernice Lieberman's

Summary Judgment Answering Brief and this Certificate of Service with the Clerk of

Court using CM/ECF which will send notification of such filings to the following:

> Marc P. Niedzielski, Esquire
> Department of Justice
> Carvel State Office Building
> 820 N. French Street
> Wilmington, DE 19801

Edward M. McNally(#614)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
Wilmington, DE 19801
(302) 888-6800
emcnally@morrisjames.com

1131729/1