IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELBERTA BERNICE LIEBERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 96-523-GMS |
| ) | |
| THE STATE OF DELAWARE, ) | |
| THE FAMILY COURT OF THE ) | |
| STATE OF DELAWARE ) | |
| ) | |
| Defendants. ) | |

**COMPENDIUM OF UNREPORTED CASES CITED IN
PLAINTIFF ELBERTA BERNICE LIEBERMAN'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
Attorneys for Plaintiff
Elberta Bernice Lieberman
emcnally@morrisjames.com

Dated: April 4, 2005

TABLE OF CONTENTS

Case                                                                                                         TAB

*Elberta Bernice Lieberman v. State of Delaware*
    2003 WL 21658273 (3d Cir. July 14, 2003)......................................................1

*Positran Mfg., Inc. v. Diebold, Inc.,*
    2003 WL 21104954 (D. Del. May 15, 2003).....................................................2

# TAB 1

Westlaw.

70 Fed.Appx. 630　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
70 Fed.Appx. 630, 2003 WL 21658273 (3rd Cir.(Del.)), 26 NDLR P 108
(Cite as: 70 Fed.Appx. 630, 2003 WL 21658273 (3rd Cir.(Del.)))

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Elberta Bernice LIEBERMAN,
v.
State of DELAWARE; Family Court of Delaware,
Appellants.
No. 01-3540.

Submitted Under Third Circuit LAR 34.1(a) July 7, 2003.
Decided July 14, 2003.

Family court employee sued family court and state for alleged disability discrimination and retaliation in violation of Americans with Disabilities Act (ADA) and Rehabilitation Act. The United States District Court for the District of Delaware, Gregory M. Sleet, J., 2001 WL 1000936, granted state's motion to dismiss ADA claims, but denied motion to dismiss Rehabilitation Act claims. State appealed. The Court of Appeals, Nygaard, Circuit Judge, held that: (1) district court had jurisdiction over action, and (2) state waived Eleventh Amendment immunity with respect to Rehabilitation Act claims.

Affirmed.

West Headnotes

[1] Federal Courts ⟶1142
170Bk1142 Most Cited Cases
Pursuant to its concurrent original jurisdiction under statute governing federal question jurisdiction, district court had jurisdiction over action in which employee of state family court sued state and family court for alleged violations of Rehabilitation Act and Americans with Disabilities Act (ADA), notwithstanding contention that United States Constitution vested Supreme Court with original jurisdiction in actions in which state was party. U.S.C.A. Const. Art. 2, § 2, cl. 2; 28 U.S.C.A. § 1331; Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[2] Federal Courts ⟶266.1
170Bk266.1 Most Cited Cases
State of Delaware waived its Eleventh Amendment immunity with respect to Rehabilitation Act claims by employee of state family court, which was alleged to be recipient and beneficiary of federal financial assistance. U.S.C.A. Const.Amend. 11; Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.

*630 On Appeal from the United States District Court for the District of Delaware. (D.C. Civil No. 96-cv-00523). District Judge: The Honorable Gregory M. Sleet.

Before NYGAARD, SMITH, and GREENBERG, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

**1 Appellee, Elberta Bernice Lieberman, who had worked in a variety of positions at the Family Court of the State of Delaware for twenty years, filed a complaint with the EEOC claiming disability discrimination by her supervisor. The EEOC dismissed Lieberman's complaint, and sent her a right-to sue letter. In 1996, Lieberman then sued the State of Delaware and the Family Court of the State of Delaware, [FN1] *631 and her complaint contains claims under (1) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (2) Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. § 701 et seq., (3) the anti-retaliation provisions of the ADA, and (4) the anti-retaliation provisions of the Rehabilitation Act. The District Court granted the State's motion to dismiss Lieberman's Title II claims on the basis of Eleventh Amendment immunity but denied the State's motion to dismiss Lieberman's Rehabilitation Act claims. The State of Delaware appealed. Since we find that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

70 Fed.Appx. 630                                                                                              Page 2
70 Fed.Appx. 630, 2003 WL 21658273 (3rd Cir.(Del.)), 26 NDLR P 108
(Cite as: 70 Fed.Appx. 630, 2003 WL 21658273 (3rd Cir.(Del.)))

the District Court had jurisdiction over the Rehabilitation Act claims and that Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir.2002), controls the Rehabilitation Act issue, we will affirm.

> FN1. In 1997, at the request of Lieberman, the District Court stayed this matter for additional EEOC investigation. A year later, the EEOC dismissed the complaint and sent another right-to-sue letter.

[1] First, appellants argue that, because Article II, § 2, clause 2 of the U.S. Constitution vests the Supreme Court with original jurisdiction where a state is a party, the District Court lacks jurisdiction to hear the suit. Appellants do not mention, however, the well-established principle that Congress can give lower federal courts concurrent jurisdiction over matters where the Supreme Court has original jurisdiction. Ames v. Kansas, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884). In fact, ever since the Judiciary Act of 1789, Congress has assumed that the constitutional grant of original jurisdiction to the Supreme Court could be made concurrent with the jurisdiction of the lower federal courts. We maintain the unremarkable position that 28 U.S.C. § 1331 properly provides the District Court with jurisdiction over this matter.

[2] Turning to the Eleventh Amendment issue, we note that, while this case was pending with us, but before briefing, we decided Koslow v. Pennsylvania, 302 F.3d 161 (3d Cir.2002). In Koslow, a disability discrimination case under § 504 of the Rehabilitation Act, we had to determine whether the Commonwealth of Pennsylvania had waived its sovereign immunity by accepting certain federal funds for the Department of Corrections. Koslow, 302 F.3d at 165. We determined that Congress could require a state to waive its immunity to suit under the Rehabilitation Act as a condition for receiving federal funds and had done so. Id. at 172. Since the Commonwealth of Pennsylvania had accepted federal financial assistance under the State Criminal Alien Assistance Program, and provided these federal funds to the Department of Corrections, we concluded that the Commonwealth had waived immunity for § 504 claims against its Department of Corrections under the Rehabilitation Act. Id. at 172.

**2 Our decision in Koslow is on all fours with this case. At all relevant times, Lieberman worked in an activity or program of the Family Court that is alleged to be a recipient and beneficiary of federal financial assistance. We therefore affirm the District Court's thoughtful determination that the appellants have waived their Eleventh Amendment immunity, and that the appellants' motion to dismiss Lieberman's claims under Section 504 of the Rehabilitation Act should have been denied.

70 Fed.Appx. 630, 2003 WL 21658273 (3rd Cir.(Del.)), 26 NDLR P 108

**Briefs and Other Related Documents** (Back to top)

. 2003 WL 23508224 (Appellate Brief) Appellant's Reply Brief (Mar. 12, 2003)Original Image of this Document (PDF)

. 2003 WL 23509181 (Appellate Brief) Answering Brief of Appellee/Plaintiff Bernice Lieberman (Feb. 27, 2003)Original Image of this Document (PDF)

. 2002 WL 32502449 (Appellate Brief) Appellant's Opening Brief (Dec. 30, 2002)Original Image of this Document (PDF)

.                01-3540                (Docket) (Sep. 17, 2001)

. 2001 WL 34546626 (Appellate Brief) Brief for the United States as Intervenor (2001)Original Image of this Document (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.2d
2003 WL 21104954 (D.Del.)
(Cite as: 2003 WL 21104954 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
POSITRAN MANUFACTURING, INC.,
Plaintiff/Counter-Defendant,
v.
DIEBOLD, INC., Defendant/Counter-Claimant.
**No. 02-466 GMS.**

May 15, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On May 31, 2002, the plaintiff, Positran Manufacturing Inc. ("Positran"), filed the above-captioned action asserting claims for breach of contract. In response, the defendant, Diebold, Inc. ("Diebold") has asserted counterclaims for breach of contract, fraud, and unjust enrichment. A two-day bench trial is scheduled to begin on June 16, 2003.

Presently before the court is Diebold's motion for relief from Positran's allegedly intentional destruction of evidence. For the following reasons, the court will grant Diebold relief, albeit not in the requested form.

II. BACKGROUND

In the first count of its counterclaim, Diebold asserts that Positran failed to make payments to Mosler as they became due for goods tendered by Mosler under its agreement with Positran. [FN1] Positran, however, argues that this obligation was "canceled out" under a supposed oral agreement between it and Mosler to "net" that obligation against amounts Mosler allegedly owed to Positran.

> FN1. Diebold subsequently purchased Mosler's assets and accounts-receivable, including the roughly $1.3 million account-receivable against Positran.

Diebold now contends that, while its discovery requests were pending, and just days before his deposition, Positran's Vice-President, Joseph Uhl ("Uhl"), intentionally destroyed relevant evidence. Specifically, Diebold alleges that Uhl destroyed his handwritten notes which set forth his contemporaneous account of events that are the subject of both Positran's claim and Diebold's counterclaim. This fact is not in contention because, at his July 11, 2002 deposition, Uhl admitted that, just before his deposition, he did, in fact, throw away his handwritten notes.

Diebold alleges that the destroyed notes reflected communications between Positran and Mosler regarding Mosler's product orders to Positran. According to Diebold, these communications are crucial to the issue of the scope of the implied license to make Mosler goods. Diebold further alleges that the destroyed notes contained information on the Positran-Diebold negotiations that led to the agreement upon which Positran bases its "netting" claim.

Additionally, Diebold maintains that, not only did Uhl destroy documents, he fabricated a typewritten document which was subsequently produced to Diebold in discovery. Uhl then falsely testified that the document was a verbatim, typed version of the destroyed handwritten notes. In support of its contention that this document is fraudulent, Diebold points to the following testimony taken from Uhl at his July 11, 2002 deposition. At that deposition, Uhl stated that the only documents to which he referred in creating the typed document were the handwritten notes that he destroyed. He further testified that the only difference between the documents is that, whereas the destroyed documents were handwritten, the produced document is typewritten.

Upon closer inspection of the produced document, however, Diebold noticed that it duplicates, often verbatim, excerpts from Positran's complaint. Additionally, while Uhl stated that his handwritten notes did not refer to exhibits, the typed document does refer to exhibits. Those exhibit references in turn exactly match the exhibit references in Positran's complaint.

III. DISCUSSION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 21104954 (D.Del.)  
**(Cite as: 2003 WL 21104954 (D.Del.))**

Page 2

*2 A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *See, e.g., Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa.1996) (citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994)); *accord Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 888-89 (S.D.N.Y.1999) (asking whether the party "knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation"); *Bass v. General Motors Corp.,* 929 F.Supp. 1287, 1288 (W.D.Mo.1996) (same). A party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to be destroyed may be sanctioned by the court. *See, e.g., Howell,* 168 F.R.D. at 505; *accord TeleCom Intn'l Am. Ltd. v. AT & T Corp.,* 189 F.R.D. 76, 81 (S.D.N.Y.1999). When this destruction is willful or in bad faith and intended to prevent the other side from examining the evidence, the court may impose the most severe sanction of them all-the outright dismissal of a claim or the entry of a default judgment. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 74 (S.D.N.Y.1991) ("[T]he even harsher sanction of default [or dismissal] may be imposed as a sanction for the intentional destruction of evidence if the party seeking the evidence has been severely prejudiced and no lesser sanction is adequate."); *accord TeleCom,* 189 F.R.D. at 81 (noting that the sanction of dismissal is a "drastic remedy" which should be imposed only in "extreme circumstances," such as when a party wilfully destroys evidence or otherwise acts in bad faith) (relying on *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)); *Baliotis,* 870 F.Supp. at 1289 ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a 'last resort,' to be imposed only 'if no alternative remedy by way of a lesser, but equally efficient, sanction is available." ') (citations omitted).

When determining whether to impose sanctions for the spoliation of evidence, the court must consider the following three factors:
  (1) the degree of fault and personal responsibility of the party who destroyed the evidence;
  (2) the degree of prejudice suffered by the other party; and
  (3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future.
See *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994); *accord Indemnity Ins. Co. of N. Am. v. Liebert Corp.,* 1998 WL 363834, at *3 (S.D.N.Y. June 29, 1998).

As the *Schmid* court emphasized, when determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case. 13 F.3d at 80; *see also Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995) ( "[I]t must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."); *accord Collins v. Throckmorton,* 425 A.2d 146, 150 (Del.1980) ( "[W]here a litigant intentionally suppresses or destroys pertinent evidence, an inference arises that such evidence would be unfavorable to his case .").

*3 In addition, when considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed. *See Thiele v. Oddy's Auto & Marine, Inc.,* 906 F.Supp. 158, 162 (W.D.N.Y.1995). As the *Thiele* court explained, when one side is completely deprived of the opportunity to inspect the evidence because it was destroyed after the other side had a chance to examine it, sanctions for spoliation are generally appropriate. *Id.* at 162-63 ("[W]ithout any ability to examine the boat, [the third-party defendant] will be greatly frustrated in its ability to defend its case. Since [the plaintiff] is plainly at fault for allowing the boat to be placed in a landfill, any claims against [the third-party defendant] must be dismissed."); *see also Baliotis,* 870 F.Supp. at 1290-91 ("At a minimum ... an opportunity for inspection should be afforded ... before relevant evidence is destroyed.").

In the present case, it is clear that Uhl's destruction of his notes reflects an extreme degree of fault and personal responsibility. Indeed, he admits that he personally destroyed his contemporaneous account of events that are, at a minimum, relevant to the central issues in this case. Further, he destroyed the evidence, not before litigation ensued, but rather, months after Diebold served document requests in a related case, a month after Positran filed its complaint in the present case, and mere days before his own deposition. On these facts, Positran cannot credibly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2003 WL 21104954 (D.Del.)  
**(Cite as: 2003 WL 21104954 (D.Del.))**

Page 3

claim that Uhl was unaware of his obligations.

More disturbing still, Positran now attempts to explain the similarities between Uhl's typewritten document and its complaint by arguing that the typewritten document is verbatim only to the extent that portions of the information were taken from Uhl's handwritten notes. Positran further explains that Uhl may have also referred to other documents in preparing his typewritten notes. Thus, Positran's explanation is basically that some of the typewritten document is a verbatim transcript of Uhl's handwritten notes, but not necessarily all of it reflects his notes. Moreover, although Uhl himself denied having referred to outside documents at his April 16, 2003 deposition, Positran takes the position that he was "intimidated" during the questioning, and was thus incorrect on this point.

While the problems with Positran's explanation are manifold, the court need only address one to make its point. Assuming that Positran's version is correct, this position merely exacerbates the problem because it makes it even less clear whether the typed document bears any resemblance to Uhl's handwritten notes. Neither the court, nor Diebold, can know what Uhl culled from his notes, what he pulled from other sources, and what may have been destroyed in notes he ultimately omitted from the typewritten document.

*4 Likewise, because Diebold has no means of determining what Uhl's contemporaneous notes described, the prejudice to Diebold is not insignificant. There is no question that Diebold did not have the opportunity to examine Uhl's notes prior to their destruction. Additionally, Diebold has presented evidence that the information in Uhl's handwritten document would have been relevant to its case. For instance, focusing just on the May 7, 2001 entry in Uhl's typed document, the meeting that day allegedly related to a "credit hold," Positran's refusal to ship products, a production cut-back, quality issues, and a possible account "netting" arrangement. These are all issues in the present case and in its related companion case. Instead of Uhl's contemporaneous notes of this meeting, however, Diebold is left with Positran's assurance that Uhl completely and accurately transcribed all of his notes from that meeting. Moreover, Uhl's actions have deprived Diebold of the opportunity to use a contemporaneous record to cross-examine Positran's representative to determine what really occurred. Thus, given Positran's own inability to coherently and consistently explain what the typewritten document actually consists of, the court is compelled to conclude that Diebold has suffered prejudice through the loss of the handwritten document.

In light of the circumstances surrounding Uhl's destruction of his notes, the unavoidable inference is that the notes would have been helpful to Diebold's case. The court does not, however, believe that Diebold's requested sanction of dismissal is warranted in this case. Diebold has not argued that Uhl's handwritten notes are the only evidence available to prove its claims and adequately defend itself. Thus, while a sanction is clearly warranted, dismissal would be unjustly harsh. The court will, therefore, impose a "spoliation inference" in this case. This inference will allow the trier of fact, in this case, the court, to assume the destroyed evidence would have been unfavorable to the offending party. Such a sanction is sufficient to avoid substantial unfairness to Diebold, while at the same time serving as a deterrent to Positran, as well as other future litigants who may consider engaging in similar dilatory tactics.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Diebold's Motion for Relief from Intentional Destruction of Evidence (D.I.25) is GRANTED.
2. Positran's Motion to Exceed Its Answering Brief Page Limit (D.I. 44) is declared MOOT.

2003 WL 21104954 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

.         1:02CV00466            (Docket)  
(May. 31, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF ELECTRONIC SERVICE

I, Edward M. McNally, hereby certify that on April 4, 2005, I electronically filed copies of the Plaintiff Elberta Bernice Lieberman's Summary Judgment Answering Brief, Compendium of Unreported Cases Cited in Plaintiff Elberta Bernice Lieberman's Summary Judgment Answering Brief and this Certificate of Service with the Clerk of Court using CM/ECF which will send notification of such filings to the following:

Marc P. Niedzielski, Esquire
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

_____
Edward M. McNally(#614)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
Wilmington, DE 19801
(302) 888-6800
emcnally@morrisjames.com

1131729/1