# EXHIBIT 2

## ADMINISTRATIVE PLAN

THIS ADMINISTRATIVE PLAN is entered into between the Family Court of the State of Delaware, (hereinafter referred to as "the Court,") and the Division of Child Support Enforcement of the Department of Health and Social Services, (hereinafter referred to as "the Division").

WHEREAS, the Court and the Division entered into an Administrative Plan dated November 18, 1991 which enumerated the goals and objectives of a certain Cooperative Agreement, as amended, between the two parties dated August 21, 1991, and delineated the obligations of the respective parties in the processing of IV-D child support cases in the State of Delaware;

NOW, THEREFORE, the parties hereto agree to the following Administrative Plan which supersedes all previous Administrative Plans;

I.  **PURPOSE**

This Plan shall serve to supplement the existing Cooperative Agreement entered into between the Court and the Division.  This document will effectuate the objectives and goals of that Agreement and will delineate the specific responsibility of the parties with regard to the procedures set forth herein.  It is incorporated by reference into **Section V** of the Agreement.  This document shall become effective on the date signed by the parties.

001305

This Plan is entered into with the understanding that it will need to be revised in the very near future as the automation of the Court will most undoubtedly impact on present procedures.

## II.   APPLICATION FOR IV-D SERVICES

A.   Responsibilities of the Division:

1.   The Division shall publicize the availability of services provided under Title IV-D of the Social Security Act as required by 45 CFR 302.30.

2.   The Division shall provide applications on the date an individual makes a request-in person or mail an application to an individual within five (5) working days of a written or telephone request for services.

a.   All applications will be accompanied by information describing available services, the individual's rights and responsibilities, and the State's fees, cost recovery and distribution policies.

b.   The information described in 2.a above shall be provided to AFDC, Medicaid and Title IV-E foster care recipients within no more than five (5) working days of referral to the Division.

3.   The Division shall accept an application as filed on the date the application and fee are received, and promptly process the application for IV-D services in all IV-D cases.

2

001306

4.    The Division shall, upon request, waive any fees for IV-D services upon a finding by the Division that the custodial parent is indigent.

5.    The Division shall provide the Court with information pertaining to the types of services available through the Division and the cost for said services.  Any change in these services or fees shall be communicated to the Court at least three (3) weeks in advance of such change.

6.    The Division shall provide the Court with applications for IV-D services.

7.    The Division shall, within no more than twenty (20) calendar days of receipt of referral of a case or filing of an application for services, open a case by establishing a case record and determining necessary action.  If inadequate location information is available, request additional information or refer case to Parent Locator Service (hereinafter referred to as "PLS").

8.    The Division shall notify the Court in writing, by motion where required by Family Court Civil Rules, when it is no longer responsible for representing a client in any pending case.

a.    This motion shall set forth to the Court that the client has been advised of his/her rights to continuing service but has declined such service and Division representation via a signed Declination of Services letter (NPA-8) in all cases possible and appropriate.

3

      b.    Additionally, in AFDC or Foster Care IV-D cases where the client terminates State aid and declines Division services and there are still arrears owing to the State, the Division shall provide an account statement illustrating the amount of State arrears owed attached to the Motion to withdraw.

**B.    Responsibilities of the Court**

    1.    The Court, using information/materials provided by the Division, shall inform custodial parents seeking to determine paternity of their children, and/or secure or enforce a support obligation of the range of services available through the Division and the Court.  Specifically, the Court shall inform such parents of the following:

      a.    In cases where a support order was entered prior to January 1, 1985 and the payments were ordered through the Division, the case is IV-D and the parent is entitled to IV-D services, unless this service has been declined, and no application fee or "Collection Only" service fee will be required.  An application update must be completed.

      b.    In all cases where a custodial parent previously received AFDC benefits but has since terminated such benefits, the case is a continuing IV-D case, accordingly no application fee or "Collection Only" service fee will be required.  If the custodial parent filed a petition on his/her own before January 1, 1985, but did not decline services, the case remains IV-D. If the custodial parent filed his/her own petition after January 1, 1985, or declined services, the case is no longer a IV-D case.

001308

c.   If any non-public assistance (hereinafter referred to as NPA) client declines IV-D services, the matter will not be a IV-D case.

d.   In non-IV-D cases where payment is ordered through the Division, an annual "Collection Only" service fee will be charged to the custodial parent.

e.   An NPA client may request a fee waiver because of indigence.

2.   The Court, after discerning what type of case is before it using the above criteria, shall provide a Division application where IV-D services are sought.

3.   The Court shall notify the Division within twenty (20) calendar days of any mediation or hearing scheduled in actions filed by or against a former Division client, where the Court has been notified that State arrears exist; a copy of the petition and a scheduling notice will be sent to the Division.

## III. LOCATION OF THE ABSENT PARENT

A.   Responsibilities of the Division

1.   The Division shall have the responsibility for the location of an absent parent in all IV-D cases.

2.   Within no more than 75 calendar days of determining that location is necessary, the Division shall access all appropriate location sources, including the Federal PLS, and ensure that location information is sufficient to take the next appropriate action.

5

3.    The Division shall utilize appropriate local and State resources including, but not limited to, the Department of Labor and the Division of Motor Vehicles.

4.    The Division shall refer appropriate cases to the IV-D agency of any other State's central registry for action within twenty (20) calendar days of determining that the absent parent or putative father is in another State.

5.    The Division shall periodically repeat location attempts in cases in which previous attempts to locate absent parents or sources of income and/or assets have failed but there still exists adequate identifying and other information to meet requirements for submittal for location.  These attempts shall be repeated quarterly or immediately upon receipt of new information, whichever occurs sooner.  Quarterly attempts may be limited to automated sources, but must include accessing State employment security files.

6.    At least annually, the Division must submit to the Federal PLS cases which need location where previous location attempts have failed and which meet the requirements for submission thereto.

B.    Responsibilities of the Court

1.    When the Court continues a case for PLS, it shall notify the Division's locate supervisor in the appropriate county in writing (copy of Court order or mediation memorandum), within ten (10) working days of the hearing date.

001310

## IV. PETITION TO ESTABLISH PATERNITY PURSUANT TO 13 DEL.C. CHAPTER 8

A. Responsibilities of the Division

1. The Division shall make a reasonable attempt to determine the paternity of every child for whom paternity has not been legally established, including but not limited to:

a. Determining those cases in which use of the Delaware long-arm statute, 13 Del.C. sec. 807(b), is appropriate and requesting the appropriate service of process when the petitions are filed.

b. Referring cases, through a URESA petition, to the IV-D agency of another State when the alleged father has no contacts to the State of Delaware.

c. Determining if there is a presumed father, pursuant to 13 Del.C. sec. 804, and joining that father as a respondent or notifying him as required by statute, unless he has previously been excluded by court order.

d. Within no more than ninety (90) calendar days of locating the alleged father, the Division shall file a petition and summons for paternity determination. Should there be more than one alleged father identified, the Division shall follow this procedure for all such persons.

2. Except as otherwise provided under the terms of this Administrative Plan, by filing a petition for support, the Division and its clients shall have been deemed to consent to blood group testing, in all IV-D cases where paternity is denied

001311

unless an objection to such testing is made in writing to the
assigned Master or Judge prior to the scheduled hearing.

3. The Division shall use competitive procurement to
contract with a reputable laboratory which performs at
reasonable costs legally and medically acceptable genetic tests
which tend to identify the father, with a 99% probability or
greater, or exclude the alleged father. The Division shall
ensure that the contractor secures blood group testing evidence
which meets the criteria set forth in 13 Del.C. secs. 810, 811.
During the selection process, the Division shall work with the
Court to ensure that the Court's requirements for the scheduling
of these tests intra and interstate are considered.

4. The Division shall make a list available of such
laboratories to appropriate courts and law enforcement
officials, and to the public upon request.

5. The Division shall advance the cost of said blood
group testing in all IV-D cases and shall pay all blood group
testing vendors directly. The Division shall comply with all
applicable Federal Regulations concerning blood group testing in
interstate URESA cases.

6. Should the alleged father agree or be found, after
blood group testing, to be the father, the Division shall, at
mediation or hearing, request that he be ordered to reimburse
the Division for the entire cost of the blood group testing.

7. The Division shall endeavor to ensure the presence of
a Deputy Attorney General to represent its interests at all
paternity hearings.

001312

B.   The Responsibilities of the Court

1.   Where paternity has been denied in IV-D cases, either as a defense to a petition for support or by answer to a petition and summons for paternity determination, the Court shall schedule blood group testing of the parties, within thirty (30) calendar days of such order.

2.   The Court shall establish a manual case file for all petitions and summons for paternity determination.

3.   The Court shall load the petition into the Court's case tracking system and assign a petition number to the pending action.

4.   The Court shall notify the absent parent, the custodial parent, and the Division of the hearing date(s).

5.   Where the paternity of a child who is the subject of a IV-D petition for non-support is admitted by the alleged father, and the parties agree that paternity should be legally established, the Court shall provide an Acknowledgment of Parentage form for execution by the parties pursuant to 13 Del.C. sec. 809.

6.   The Court shall schedule the child(ren), mother, and alleged and/or presumed father(s) to have blood samples drawn, obtain the test results, and forward those results to counsel and/or parties as may be appropriate.

7.   If an objection is made by the Division to blood group testing, the Court shall conduct a hearing to determine whether the testing is necessary and/or whether the Division or the alleged/presumed father(s) should advance the cost of same.

9

001313

8.   Upon request of the Division, in all cases where paternity is established after blood group testing has been completed, the Court shall order the father to reimburse the Division for the cost of the testing, unless he is found to be indigent.  All payments made for reimbursement shall be ordered paid directly to the Division, over a period not to exceed six (6) months, unless good cause is shown.

9.   The Court shall adjudicate paternity and, when appropriate, enter a child support order.  Two copies of the Court's disposition establishing paternity shall be sent to the initiating State in the case of an interstate URESA action, two copies shall be sent, within five (5) calendar days to the Division earmarked for the Operations and the Accounting units respectively, and one copy shall be sent to the Bureau of Vital Statistics.

10.   Where the alleged father is excluded by blood group testing results, the Court shall schedule a hearing before a Master within thirty (30) calendar days of receipt of same.  At such hearing, the Court shall hear any evidence or argument to support a request for a redraw or retest.  If no such request is made, or if such request is denied, the Master shall admit the blood group testing results into evidence and make a finding of non-paternity.  All related petitions, involving these parties, shall be dismissed.

11.   The Court shall hear all petitions filed under the Delaware Parentage Act, 13 Del.C. chapter 8, in accordance with Court rules as they now exist or are hereafter amended.  The

001314

Court shall endeavor to hear the case within ninety (90) days of service of summons. The Court shall resolve the case within one (1) year of the later of successful service of process or the child(ren) reaching six (6) months of age.

## V.   PETITION FOR ESTABLISHMENT, MODIFICATION, OR ENFORCEMENT OF SUPPORT OBLIGATION

A.   The Responsibilities of the Division

1.   The Division shall, within forty (40) calendar days of accepting the client's application or locating the absent parent or of establishing paternity, file with the Clerk of Court petitions in all IV-D cases.

2.   The Division shall ascertain whether or not there is a presumed father, pursuant to 13 Del.C. sec. 804, in any case where a child is born out of wedlock. If there is such a person but he is not alleged to be the father of the child in question, he shall be joined in the action, if subject to the jurisdiction of this Court, or notified of the pending action, if he is outside the Court's jurisdiction, unless he has been previously excluded as the father by an Order of this Court or a court of competent jurisdiction.

3.   In every action involving a child born out of wedlock, the Division shall make every effort to ensure the Mother's presence at mediation or Court hearing or, in her absence, provide an affidavit of paternity. The Division shall initiate appropriate action under the non-cooperation provision

001315

of the Federal Regulations for AFDC clients who fail to appear at mediation or hearings.

4.   Where appropriate the Division may file an affidavit requesting emergency relief/expedited scheduling, or motion to bypass mediation/judicial scheduling in accordance with Court rules.

5.   Where a petition is dismissed without prejudice, the Division shall, at the time of dismissal, examine the reasons for dismissal and determine when it would be appropriate to seek an order in the future and do so at that time.

B.   Responsibilities of the Court

1.   The Court shall docket all legally and procedurally sufficient petitions filed and proceed with scheduling and/or notification procedures as set forth in Section VI.

2.   When a petition filed is insufficient or incorrect, the Court shall return said petition to the Division without being docketed and advise the Division of the error.

3.   The Court shall consider all applications for emergency relief/expedited scheduling, motions to bypass mediation or for judicial scheduling in the first instance.

4.   The Court shall waive the filing fee in all IV-D cases provided that the Division pay the cost of service of summons upon the respondent when personal service is required.

001316

## VI.   EXPEDITED JUDICIAL PROCESS FOR IV-D CASES:

## MEDIATION/MASTER'S HEARINGS

A.   Responsibilities of the Division

1.   The Division shall contract with a private process server to serve its summons and petitions.   This process server shall:

a.   return to the Court all summons both served and unserved within twenty (20) working days of receipt of same.

b.   forward a copy of all summonses both served and unserved on the Division every Friday.

2.   Where the relief sought is the establishment of paternity and a support order, the Division shall file with the Court the following completed documents:

a.   An original petition and two (2) copies.

b.   An original summons and two (2) copies, or original reissued summons and two (2) copies.

3.   In cases where service is not effectuated, the Division shall research for a better address or better service information.   If this information is obtained, a new summons shall be prepared  and filed with the Court, with any appropriate notations on the summons for special service instructions, and shall note the filing date of the original petition in the lower left corner.

a.   Where good service has not been obtained within ninety (90) calendar days of original filing date the Division shall maintain the case in active status for three (3) years and submit it to PLS quarterly.

13

b.    If the case is dismissed without prejudice, the Division shall, at the time of dismissal, examine the reasons for the dismissal and determine when it would be appropriate to seek an order in the future, and do so at that time.

c.    If new service information is received in a timely fashion but the petition has already been dismissed without prejudice, the Division shall, pursuant to Court rules, file a Motion to Reopen the original petition for the Court's consideration.

4.    Once service is effectuated, the Division shall prepare and file with the Court the following documents:

a.    A scheduling sheet for the Court mediation date.

b.    An original notice and two (2) copies indicating the scheduled mediation date and time--one (1) copy each to petitioner and respondent.

5.    If the petition filed is a modification or first-time contempt, the Division shall file with the Court no later than eighteen (18) working days before the requested Court date:

a.    An original petition and two (2) copies.

b.    An original notice and two (2) copies indicating the scheduled mediation date and time--one (1) copy each for petitioner and respondent.

c.    A scheduling sheet for the Court mediation date.

d.    Modification petitions only--an original summons requesting mailed notice and two (2) copies.

001318

6.    The Division shall ensure that its clients bring all documents required by the Court rules as they now exist or may be amended hereafter.

7.    For all judicial hearings, the Division shall provide account statements clearly indicating total arrears due no later than fifteen (15) working days prior to the scheduled hearing date.

8.    In cases where a hearing is to be scheduled in the first instance before a Master, the Division shall prepare and file an original and one copy of the petition together with any documents required by Court rules as they now exist or may be amended hereafter.

9.    Where the Division does not intend to use the full time allocated for the expedited process, it shall notify the Court in writing at least eighteen (18) working days in advance of the scheduled date.

10.    If the respondent fails to appear at mediation and a default order is not obtained, the Division shall request a capias.  If neither a capias or default order is obtained, the Division shall reschedule the petition on the next available calendar, within forty-five (45) calendar days of the first scheduled mediation.  Unless notice is signed by either party at mediation, the Division shall prepare notices for both parties and a summons for respondent in appropriate cases and file these with the Court.

11.    In all new support cases where personal service is returned not effectuated and the Court dismisses the petition

001319

without prejudice the Division may request that the Court reinstate the petition by providing a new service address for Respondent, as well as a summons with this new address thereon, within ninety (90) calendar days of the date of the Court order.

    12.    The Division shall assign sufficient staff so as to allow for prompt scheduling of mediation.

    13.    The Division shall endeavor to ensure that a sufficient number of Deputy Attorneys General are available to represent its interests at all Court hearings.

**B.    Responsibilities of the Court**

    1.    The Court shall make available sufficient calendar time to mediate all IV-D cases as required by federal regulation and Court rules and as provided below:

        a.    AFDC cases shall receive not less than two (2) days (calendars) per week in New Castle County, and not less than one and one-half (1 1/2) days (calendars) per week in both Kent and Sussex Counties.

        b.    Non-AFDC IV-D cases shall receive a mutually agreeable amount of calendar space, preferably proportionate to the Division's share of the Court's non-AFDC caseload.

        c.    The Court shall make available staff sufficient to mediate these calendars.

    2.    The Court shall clock-in all petitions filed by the Division on the date received.

    3.    In all petitions requesting new support the Court shall:

001320

a.  Issue the original and one copy of the summons to the process server within three (3) working days of receipt of same.

b.  Receive original returned summons from the process server, whether served or not, within twenty (20) working days of its issuance, as provided for in the Division's contract with a private process server.

4.  In all new support cases where service is effectuated and in all cases seeking the modification of an existing support order, or where the petition alleges first-time contempt, the Court shall send Division prepared notices to both petitioner and respondent a reasonable time preceding the hearing/mediation date but no earlier than twenty-one (21) days prior to that date.

5.  In new support cases where service is not effectuated the Court shall, upon receipt of the summons from the process server, dismiss the petition without prejudice.

a.  The Court shall reinstate the original petition if the Division provides to the Court a new service address for respondent and a summons containing that information within ninety (90) calendar days of the order date.

b.  The Court shall deliver the new summons to the process server within three (3) working days of the receipt of same.

6.  At the mediation hearing the mediator shall attempt to obtain either a permanent or interim consent order.

001321

a.   Where an agreement is reached, Court staff shall prepare the consent order the same day for signature of the parties.

b.   Copies of the order signed by the Master shall be sent to the IV-D client and the opposing party within five (5) working days of the date signed by the parties.

c.   If there is no agreement due to a party's failure to provide acceptable proof of income, that party will be given a reasonable amount of time to submit proof.  If no proof is forthcoming, the matter will be scheduled for a Master's hearing.

d.   The Court shall designate a mail slot where the Division's messenger can pick-up the Division's copy of the order within five (5) working days of the date signed by the parties.

7.   The Delaware Support Formula shall be applied to all cases resolved at mediation.  If the parties agree to an amount which differs from the formula, the order shall state the result of the application of the formula and compare that with the agreed upon amount of the parties and state the reasons for the variance.  The consent order is subject to review by a Master.

8.   A Master shall be available to perform the following functions:

a.   Review and execute all agreements from mediation unless disapproved;

b.   Review requests by the Division for further action based on the failure of the respondent to appear.

18

001322

c.   Where no agreement can be reached at mediation, hold a brief hearing and enter an interim support order on all non-support, modification, and contempt petitions, unless a permanent hearing can be scheduled within ten (10) working days of the mediation.

9.   A Master's hearing shall be conducted, within forty-five (45) days of the mediation session wherein a permanent consent order has not been obtained.

10.   Notification of the Master's hearing shall be given to all parties in attendance at the mediation session.

11.   Subsequent to a Master's hearing, the Court shall issue its order and forward two (2) copies to the Division, and one (1) copy each to both parties within seven (7) working days of the hearing unless the decision is reserved.

12.   Procedures implementing this section and staffing shall be sufficient to ensure compliance with 45 CFR 303.101.

VII.   ENFORCEMENT OF SUPPORT ORDERS

A.   Responsibilities of the Division

1.   The Division shall maintain and use an effective system for monitoring all provisions of support orders, including health insurance for child(ren).  The Division shall identify cases in which the absent parent is in default for seven (7) working days.

2.   The Division shall take any appropriate enforcement action (except income withholding, and Federal and State income tax refund offset) unless service of process is necessary,

001323

within thirty (30) calendar days of identifying a delinquency or other support-related non-compliance with the order, or location of the absent parent, whichever occurs later.

3.    If service of process is necessary prior to taking an enforcement action, the Division shall complete such service, or document unsuccessful attempts to serve, and take enforcement action within no later than sixty (60) calendar days of identifying a delinquency, or other support-related non-compliance with the order or location of the absent parent, whichever occurs later.

4.    Upon notification of non-compliance with an order to provide health insurance coverage, the Division shall take appropriate enforcement action within the above time frames.

5.    The Division shall automatically provide, on or before the mediation or hearing date, an appropriate account statement in all IV-D cases wherein Contempt/Arrears is alleged.

6.    For all non-mediation cases, account statements shall be provided by the Division's Accounting Department within fifteen (15) working days of receipt of request of same.  If requested, the account statements shall contain a breakdown between arrears owed to Delaware and/or any other State and arrears owed to the custodial parent.

7.    When a default is identified in an existing order, the Division shall file a Verified Notice of Income Attachment, conforming to the requirements of 13 <u>Del.C.</u> sec. 513(b), seven (7) working days after a default in payment.

001324

8.    If the case is appropriate for filing a contempt petition, the Division shall do so and may also pursue the filing of a judgment or request a bond to ensure payment.

9.    Where a wage attachment has been issued but the Division is notified that the absent parent changes employers, the Division shall advise the Court by transmitting a Transfer of Attachment form.  If the Division elects to also file a contempt petition in the same case it shall wait seven (7) calendar days from the date of transmitting the Transfer of Attachment form.

10.    In cases where enforcement has been unsuccessful, the Division shall examine the reasons the enforcement attempt failed and determine when it would be appropriate to take enforcement action in the future, and take the enforcement action at that time.

11.    The Division shall notify the Court of any change of address for their clients within five (5) working days of receipt of same.

B.    Responsibilities of the Court

1.    The Court shall make all requests for account statements in writing to the Division accounting manager no later than twenty (20) calendar days in advance of the hearing. The Court shall also access account statements through DACSES on-line at the Court facility.  The Court shall maintain a copy of the account statement, presented at the time of hearing, in the Court file and archives for use by the parties present at the hearing.

21

001325

2.   The Court shall issue wage attachments in all IV-D cases absent the submission of a written agreement of the parties or a finding of good cause by the Court.  These attachments shall be issued within fifteen (15) calendar days of the date the support order is issued.

3.   Upon the filing of a Verified Notice of Income Attachment the Court shall issue the wage attachment within ten (10) working days after the period to contest the attachment has lapsed, or within ten (10) working days of the Court's order after a contest has been filed, or within ten (10) working days of the Court's order after a contested hearing on the matter.

4.   The Court shall transfer an existing wage attachment to a new employer within ten (10) working days of receipt of a Transfer of Attachment form from the Division.

5.   The Court shall schedule  Contempt of Court petitions within sixty (60) calendar days of the filing of same.

a.   Any subsequent petition alleging contempt shall, in the first instance, be scheduled before a Master.

b.   Following two (2) findings of contempt at the Masters' level, and upon motion of the Division, the Court shall consider the scheduling of any subsequent contempt petitions before a Judge.

5.   The Court shall forward to the Division within five (5) working days of receipt any information concerning the change of address/employment/health insurance of the obligor.

001026

## VIII. TAX INTERCEPT

A.    Responsibilities of the Division

1.    The Division shall submit all cases which meet the certification requirements for State tax refund offset annually and for Federal tax refund offset in accordance with the Federal Regulations.

2.    The Division shall comply with all State and Federal laws and procedures applicable to tax intercepts.

B.    Responsibilities of the Court

1.    The Court shall schedule petitions to establish arrears for tax intercept for new IV-D clients, who had previously had direct pay Court orders.  These petitions shall be scheduled within 120 calendar days of receipt or service of process, if required, whichever occurs later.  If the case is within one month of certification deadline, the Division may request the Court to consider an emergency hearing.  At the hearing, the arrears shall be established and all future payment ordered through the Division.

2.    Where a support obligor receives notice of intent to intercept his/her tax refund and disputes arrearages, the Court shall make available a petition to establish arrears for tax intercept.  This petition shall be scheduled for hearing within thirty (30) calendar days of receipt of same or service of process, whichever occurs later.

001327

## IX.   INTERSTATE REQUESTS

A.   Responsibilities of the Division

   1.   The Division shall determine the appropriate remedy in all outgoing IV-D cases.

      a.   The Division shall complete and file with the Court all petitions for new support and paternity establishment within fifteen (15) calendar days of determining the location of the absent parent.

      b.   The Division shall complete and send all other URESA action requests to the out-of-state agency within twenty (20) calendar of determining the location of the absent parent.

   2.   The Division shall accept and process all incoming requests for assistance including requests for paternity establishment, support establishment, enforcement, locate, and information updates within seventy-five (75) calendar days of receipt of same.

      a.   When a petition is required to be filed, the Division shall file it in accordance with the procedures outlined in the preceding sections.

      b.   When appropriate the Division shall have cause to file in the Court an Entry of Appearance signed by a Deputy Attorney General to inform the Court that a Deputy Attorney General will be provided to represent the initiating petitioner's case in all incoming cases.

   3.   In accordance with Title 13, Chapter 6 of the Delaware Code, the Division is named Information Agent for the State and shall respond to all out-of-state questions.

001028

B.   **Responsibilities of the Court**

1.   The Court shall review all outgoing requests and forward to the responding jurisdiction within five (5) calendar days of receipt of same.

2.   The Court shall forward to the Division, for review, response, and filing, within three (3) days of mistaken receipt any incoming petitions or requests for information follow-up in all IV-D cases

3.   The Court shall process incoming petitions or requests filed by the Division and schedule these before a Master of the Court in accordance with Family Court Civil Rule 16(a).

4.   The Court shall notify the Division within 15 working days of unsuccessful service of process of an interstate petition for income withholding.

X.   <u>CASE CLOSURE</u>

The following pertain to the Division only

A.   The Division may close cases which meet the following criteria:

1.   The child has reached the age of majority, and there is no longer a current support order, and either no arrearages are owed or arrearages are under $500 or unenforceable under State law.

2.   The child has not reached the age of majority, and there is no longer a current support order, and arrearages are less than $500 or unenforceable under State law.

001029

3. The death of the absent parent, or putative father, if no further action, including a levy against the estate, can be taken.

4. Paternity cannot be established because:

a. the child is at least eighteen (18) years old and a paternity action is barred by a statute of limitations; or

b. a genetic test, court or administrative order has excluded the putative father and no other putative father can be identified; or

c. the Division has determined that it would not be in the best interest of the child to proceed in any case involving incest or forcible rape or any case where legal proceedings for adoption are pending.

5. The Division has been unable to locate the absent parent despite repeated, unsuccessful, multiple source, location efforts over a three (3) year period.

6. The absent parent cannot pay support for the duration of the child's minority because the parent has been institutionalized in a psychiatric facility, is incarcerated with no chance of parole, or has a medically verified total and permanent disability with no evidence of support potential, and has no income or assets available which could be levied or attached for support.

7. The absent parent is a citizen of, and lives in, a foreign country, with which the State has been unable to establish reciprocity, does not work for the United States

001330

Government or a company which has headquarters or offices in the United States, and has no reachable domestic income or assets.

8. Federal Parent Locator services have been completed at the request of the State parent locator service on behalf of the resident parent, legal guardian, attorney or agent of a child.

9. At the request of the custodial parent in any non-AFDC case or former AFDC, Medicaid or foster care cases with no arrearages owing to the State.

10. The Division has been notified by the IV-A or IV-E agency that there has been a finding of good cause for the recipient's failure to cooperate in obtaining support and either agency has determined that paternity establishment or support establishment and enforcement may not proceed without risk of harm to the child or caretaker relative.

11. Any non-AFDC case in which the Division either is unable to contact the custodial parent over at least a thirty (30) calendar day period despite attempts to contact the parent by both phone and mail, including at least one certified letter, or documents both the circumstances of the custodial parent's non-cooperation and an action by this parent is essential for the next step in providing support enforcement services.

B. The Division shall sixty (60) calendar days prior to any case closure involving criteria A.1 through A.7 and A.11 above, notify the custodial parent in writing of the intent to close the case. The case shall be kept open, or in the case of a prior closure shall be reopened, if the custodial parent

001331

supplies information, or there is a change of circumstances, which could lead to the establishment of paternity or a support order or the enforcement of an order.

C.   The Division shall retain all records for cases closed pursuant to this section, for a period of three (3) years.

## XI.   SAFEGUARDING INFORMATION

The following pertain to both the Division and the Court

A.   The use or disclosure of any information obtained through the Federal Parent Locator Service or information concerning IV-D applicants or clients is limited to purposes directly connected with:

1.   the administration of the IV-D program.

2.   any investigation, prosecution or criminal or civil proceeding conducted in connection with the administration of the IV-D program.

3.   the administration of any other Federal or Federally assisted program which provides assistance, in cash or in-kind or services, directly to individuals on the basis of need.

B.   Disclosure of information that identifies as applicant or client by name or address to any committee or legislative body (Federal, State, or local) is prohibited.

## XII.   FINANCIAL REQUIREMENTS

A.   Responsibilities of the Division

1.   The Division shall reimburse the Court pursuant to the Cooperative Agreement for all actual allowable direct and

001332

indirect expenditures incurred under the Agreement at the applicable Federal Financial Participation rate (hereinafter referred to as FFP).

2.   Upon receipt of the Court's monthly bill, the Division shall promptly process the bill and transfer the amount of the reimbursement indicated on said bill to the State Treasurer's account number:

| DEPT. | DIV. | SEC. | FUND | APPR. |
|-------|------|------|------|-------|
| 12 | 05 | 01 | 100 | 8400 |

with said transfer taking place no later than thirty (calendar?) (30) days after receipt of the funds from the Federal Government.  Simultaneous to the transfer, copies of the transmittal document shall be sent to Family Court and to the Budget director.  The copy for the Budget Director will include a copy of the Family Court billing document which will clearly state the amount of the statewide overhead deposited in the above account.  The parties understand that billing disputes between the Court and the Division will be resolved through appropriate internal procedures with any resulting modification treated as an adjustment of future bills.

3.   The Division shall advise the Court, in writing, within thirty (30) calendar days of any Federal requirements which would necessitate changes to the Cost Allocation Plan as finally adopted.

4.   The Division shall promptly advise the Court, in writing, of any deferrals, disallowances, or audit exceptions which might affect the Court's reimbursement of FFP.  The Court

001333

will act within the federally mandated time frames in responding.

B.    Responsibilities of the Court

1.    The Court shall bill the Division by submitting a monthly statement of expense under cover of a letter wherein the amount of reimbursement requested is stated.

a.    The Court shall bill monthly for statewide indirect costs in accordance with the methodology established pursuant to the Statewide Cost Allocation Plan.

b.    No indirect departmental costs (Administrative Office of the Courts) shall be billed without further agreement of the parties.

c.    This bill shall be submitted within fifteen (15) working days following receipt of the Court's Monthly Statement of Budgetary Activity and Account Balances from the Delaware Department of Finance.

2.    The Court shall implement the Ernst & Whinney Cost Allocation Plan proposed by the State of Delaware in its audit response to the Federal Office of Child Support Enforcement as modified to reflect changes in staffing and Court structure that have been made since the completion of the Ernst & Whinney study or as the Ernst & Whinney study has been modified to be acceptable to the Division, the Court, and the Federal Government.

3.    In implementing the Cost Allocation Plan, the Court shall complete the necessary time studies.  For purposes of these studies:

001334

a.   all work performed on the IV-D cases shall be considered as IV-D time.

b.   all work performed advising individuals about IV-D services, regardless of whether that individual ultimately elects IV-D services, shall be deemed to be IV-D time.

c.   twenty-eight (28) quarter hours shall be used to calculate the time study percentages.

4.   No later than December 31 of each fiscal year, the Court shall determine the indirect rate for the current fiscal year. Upon determination of this rate, the Court shall recalculate billings for the period July 1, of the previous fiscal year forward. This rate shall be used at least through the end of the current fiscal year, and shall be adjusted to actual no later than September 30 of the following fiscal year. The current fiscal year rate shall be used for estimated billings during the following fiscal year. Absent agreement of the parties to modify, this procedure shall continue thereafter. The parties understand that the indirect rate for each fiscal year shall be determined by D.M. Griffith and Associates pursuant to their existing contract to update the Ernst & Whinney Cost Allocation Plan.

5.   The parties understand that the annual adjustments to the Ernst & Whinney Cost Allocation Plan are made pursuant to results obtained by the Budget office through contract with a private entity. The Court shall cooperate with this annual review and update, the scheduling of which the Division understands is outside the control of the Court. The Court

001035

shall advise the Division of its efforts to secure timely updates.

6.    The Court shall reply, in writing, promptly to any notice of deferral, disallowance, or audit exception which might affect the Court's reimbursement of FFP.  The Court shall assist the Division in preparing responses to federal inquiries.

C.    Retention of Records as applies to both the Division and the Court

1.    Records for each year shall be retained for three (3) years from the day the Division submits its expenditure report for the last quarter of the Federal fiscal year to the Office of Child Support Enforcement.

2.    If any litigation, claim, negotiation, audit or other action involving these records has been started before the expiration of the three (3) year period, the records shall be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular period, whichever is later.

XIII.    <u>DELAWARE AUTOMATED CHILD SUPPORT ENFORCEMENT SYSTEM</u>

A.    Responsibilities of the Division

1.    The Division shall provide at minimum one terminal and one printer each to the Kent and Sussex County Family Court facilities and two terminals and one printer to the New Castle County facility.

2.    The Division shall provide passwords and access to appropriate DACSES data to select Family Court staff.

001336

3.    The Division shall provide training to Family Court staff on the use of DACSES.

4.    The Division shall be responsible for the ongoing maintenance of their equipment located in Family Court facilities.

B.    Responsibilities of the Court

1.    The Court shall arrange telecommunication support for the terminals and printers provided by the Division.  This shall include the running of lines from the controller to the devices.

2.    The Court shall select staff requiring access to DACSES on a need-to-know basis.  The Court shall conform with the Division's security requirements.

3.    The Court shall identify an individual at each facility who will be the liaison with the Division for identifying and resolving the system problems.

4.    The Court shall provide any supplies required to support DACSES equipment located at the Court facilities.


XIV. CONCLUSION

A.    The Division and the Court shall meet regularly to evaluate and update this Plan.  Furthermore, a methodology shall be developed for evaluating whether the Court and the Division are meeting the standards set forth in this Plan.  Said evaluation shall take place at least quarterly.

B.    The Division and the Court shall ensure that changes relating to the subject matter of this Plan are communicated within a reasonable time to allow both parties adequate time to

001337

put systems and procedural changes into place.  Likewise, copies of forms and written material shall be provided with at least three (3) months' advance notice to allow such reproduction and distribution as may be necessary to implement the change.

C.    The Division shall provide the Court with six (6) copies of all written procedures developed and issued under the Administrative Procedures Act.

D.    In the event of a conflict between the Cooperative Agreement and the Administrative Plan, the terms of the Cooperative Agreement shall be controlling.

E.    This Plan shall be reviewed on a regular basis to ensure compliance with current practice and law.  It will continue in full force and effect year by year unless terminated or modified as provided in the Plan, and signed by the undersigned parties, their successors or assigns.


_____
Vincent J. Poppiti,
Chief Judge, Family Court


_____
Muriel B. Rusten,
Acting Secretary,
Department of Health &
Social Services


2/23/93
_____
Date


2/23/93
_____
Date

001338

# EXHIBIT 3



# The Family Court of the State of Delaware

## NARRATIVE COST ALLOCATION METHODOLOGY

## FOR CHILD SUPPORT ACTIVITIES

## PROVIDED BY THE DELAWARE FAMILY COURT

### EFFECTIVE JANUARY 1, 1995

David M. Griffith & Associates, Ltd.
1350 Piccard Drive, Suite 100 • Rockville, MD 20850
(301) 869-2002 • Fax (301) 869-1494

001300

The purpose of this document is to provide a revision of the methodology and cooperative agreement used by the Delaware Family Court for developing and charging Child Support costs to the Delaware Department of Health and Social Services.

## BACKGROUND

Child Support activities provided by the Family Court are reimbursed through the Department of Health and Social Services by Federal Title IV-D funding. The cognizant Federal agency for Title IV-D in the State of Delaware is the Department of Health and Social Services and, as such, reimbursement of costs incurred by the Family Court are made via a cooperative agreement with the Department of Health and Social Services. The approval process for the costing methodology is also joint venture/process between the Family Court and the Department of Health and Social Services. The revision must be available for review by the cognizant agency. The major impact of this revision will substantially change Sections VII and VIII of the cooperative agreement, which was effective July 1, 1984.

For purposes of this revision, the revised methodology will be forwarded to the applicable Federal agencies for review and comment.

## HISTORY

The costing methodology currently in place was developed by a consulting firm in 1984. This methodology provided that time records be maintained for all staff "who were directly involved with a Child support case". This statement allows for a significant interpretation as to what involvement in a case means. In addition, the time record procedure established, using random days observation detail to the fifteen minute level, encompassing over one hundred employees, is at best subjective since a clear definition of which employees are to be included and an allowable activities definition were not clearly defined. The administrative burden in the time keeping requirements as well as the development of the direct/indirect claiming procedure does not lend itself well to auditability.

1

001301

Over the past several years, the Department of Health and Social Services and the Family Court have been reviewing alternative procedures for claiming costs applicable to *IV-D* Child Support. In 1994, the Family Court contracted with David M. Griffith & Associates, Ltd. (DMG) to review and make recommendations as to the methodology in place and, if applicable, facilitate a new costing procedure for claiming beginning January, 1995. Upon review and discussion with the staff of the Family Court, Department of Health and Social Services, Federal Program staff, and the Federal Health and Human Services Division of Cost Allocation, we are proposing the following cost methodology for Child Support activities provided by the Delaware Family Court.

## ISSUES TO BE ADDRESSED

In the development of the costing methodology, two issues needed to be addressed. First, the issue of timekeeping requirements. Short of using a random moment sampling method, time sheets, in the governmental arena, are bothersome and often present suspect credibility when placed under audit scrutiny. Additionally, the administrative task of collecting and compiling the time records is burdensome. Secondly, the billing mechanism should 1. be based on an available and reasonable statistical detail, 2. on a basis which can be financially validated, and 3. provide for ease of billing as well as audit.

The procedure we are recommending has addressed these issues and will provide for a costing methodology that is auditable and not overbearing to administer.

## METHODOLOGY

The proposed costing methodology for Child Support activities provided by the Delaware Family Court is as follows.

1.  Based on prior year analysis, the Family Court will provide to the Department of Health and Social Services a report, on an annual basis, identifying and detailing

2

applicable to the Child Support Program. This report will be the basis upon which the Family Court will develop a cost per child support case processed during the prior fiscal period. The cost developed from this report will be the basis for subsequent year claims made to the Department of Health and Social Services. These claims will be made based on the number of eligible cases multiplied by the developed rate for the prior period.

2.  The Annual report provided to the Department of Health and Social Services will be developed and categorized to include the following

For example, personnel assignments in State Office, New Castle County, Sussex County, and Kent County may be categorized into a format which will allow for allocation of costs in each county. These can include but not be limited to the following:

Administration - fulltime equivalent employees Statewide/County supervised

Case Processing - staff assignments or number of cases (support/other)

Support -  staff assignments or number of cases (support/other)

Arbitration/Mediation -

Master's Units - case count

Special Programs/Grants - direct allocation

Diversion Services - staff assignments or number of cases (support/other)

Court Services - case count

3

001303

Records Management - case count

Automation - direct allocation

These are examples of the categories and allocation methods that can be used. Due to program, funding, and organizational changes that may occur a flexible format defining the intent and minimum reporting requirements would prove more effective than a definitive format that would require updates to the methodology.

3. Detail allocation statistics for use in the fiscal report will be obtained from the Family Court Annual Statistical Report. This report will provide basis relating to the caseload summary in each county and will be used where applicable.

4. Any adjustment due as a result of prior year over/under billing will be adjusted during the next fiscal period.

5. This methodology will provide a basis upon which the need for timekeeping will be minimized.

6. The denominator basis to be used for rate development will be the number of Child support cases processed by the Family Court.

001304

# EXHIBIT 4



Cooperative Agreement

December 1997

001284

Cooperative Agreement Between

Family Court of the State of Delaware

and

Division of Child Support Enforcement
Delaware Health and Social Services

This Cooperative Agreement, (hereinafter referred to as the "Agreement"), is entered into, among and on behalf of the Family Court of the State of Delaware, (hereinafter referred to as the "**Court**"), and Delaware Health and Social Services, Division of Child Support Enforcement, (hereinafter referred to as the "**Division**"), as designated by the signatures of their lawfully authorized officials.

**WHEREAS:**

The Division of Child Support Enforcement is charged with numerous responsibilities dealing with the collection and enforcement of child support obligations, including the location of non-custodial parents, the establishment of paternity, the establishment of support obligations, and

**WHEREAS:**

The Division is in constant need of the mediation, judicial, and other related services of Family Court, and

**WHEREAS:**

There is a need for a written understanding of the rights, responsibilities, duties, and obligations of these respective parties, which written understanding meets the requirements set out in 45 CFR 303.107, such that the following policies and procedures are agreed to by the Division and the Court:

001285

1

## I.  Scope and Purpose

A. This Agreement supersedes the most recent executed Cooperative Agreement entered into between the parties. It is not intended to, nor does it in any way enlarge or reduce the jurisdiction of any court of this State, nor is it intended to, nor does it in any manner encroach upon the independence of the judiciary in the determination of the issues of any case in any court.

B. The parties to this Agreement will comply with Title IV-D of the Social Security Act and ensure that applicable Federal Regulations and requirements are met.

C. The purposes of this Agreement are to establish the duties, functions, and responsibilities of the respective parties for securing financial support for minor children, which includes the establishment of the paternity of children, the determination of ability of parents to support their minor children, and the securing and enforcement of orders of child support; and to provide for the conditions of and the manner of payment for the reimbursement of certain costs and expenses incurred by the Court under this Agreement.

D. The provisions of Title IV-D of the Social Security Act and the applicable Federal regulations require that this Agreement be executed in order to meet the purposes described in the above paragraph, and to comply with the provisions of the State of Delaware Plan for Child Support under Title IV-D of the Social Security Act, and all relevant Federal requirements.

E. It is understood that the terms and conditions of the Agreement are governed by the provisions of Title IV-D of the Social Security Act, and the rules and regulations for the child support enforcement program and other applicable Federal regulations contained in Title 45 of the Code of Federal Regulations (CFR) as revised.

## II.  Definitions

A. Child Support Enforcement Program. A child support enforcement program is a program designed to provide services to families in securing support for the children of those families from non-custodial parents who are responsible for support. To qualify for Federal funding, a child support enforcement program must be operated pursuant to a State Plan approved under Title IV-D of the Social Security Act. This Plan is commonly referred to as the IV-D plan.

B. IV-D Agency. The IV-D agency is the single State agency designated to administer the State IV-D Plan. The Division is the agency responsible for administration of the Plan in the State of Delaware. The Division may delegate or contract for activities set forth in the Plan. However, any such delegation of

2

001286

authority does not relieve the Division of overall responsibility for the following: (1) ensuring that all contractors are notified of any lack of compliance with the IV-D Plan and (2) reporting on all State IV-D activities.

C. <u>IV-D Activities</u>. The following functions constitute the six (6) general types of IV-D activities:

1. Location of the non-custodial parent;
2. Establishment of paternity;
3. Establishment of a child support order;
4. Collection and distribution of child support;
5. Enforcement of the child support obligation, and
6. Cooperation with other states in child support related activities.

D. <u>IV-D Cases</u>. Each non-custodial parent against whom the IV-D agency is attempting to secure or enforce child support is considered to be a IV-D case. Where an individual is responsible for supporting children in more than one family, each separate family is considered as a separate and distinct case for funding and reporting purposes. IV-D cases consist of six (5) types: (1) Temporary Assistance to Needy Families (TANF) cases, (2) non-TANF cases, (3) Foster Care cases, (4) Medical Assistance Only (MAO) cases, and (5) Interstate cases.

1. <u>TANF Cases</u>. Cases involving a non-custodial parent whose children are receiving assistance payments through TANF.

2. <u>Non-TANF Cases</u>. Cases involving a non-custodial parent whose children are not receiving TANF where an application for IV-D services has been made by the custodial parent in accordance with the State Plan.

3. <u>Foster Case Cases</u>. Temporary placement made by the Division of Family Services for a child living with a custodian other than with his/her own parents.

4. <u>MAO Cases</u>. Cases in which Medicaid recipients are receiving medical benefits for their children.

5. <u>Interstate Cases</u>. An interstate case is one which has been referred by one state to the IV-D agency or the court in a different state for assistance with all or part of the IV-D activities.

001287

**III.**  **General Responsibilities of the Parties**

In general, **the Division** shall be responsible for processing all IV-D cases in accordance with the terms of this Agreement, the performance standards set forth in the Administrative Plan, the State Plan, IV-D Regulations, and other applicable Federal regulations.

**The Division shall have further responsibility to:**

1.  Receive child support payments in cases referred by the Court for collection, including payments received through wage attachment;

2.  Distribute support payments as required by Court order and Title IV-D of the Social Security Act;

3.  Make accounting records and information available for all Court hearings and other activities which the Court performs under this Agreement;

4.  Assist the Court in its implementation of the Division's operating procedures by making staff training, technical assistance, and other resources available;

5.  Provide funding to have attorneys available to present the Division's cases in Court, when necessary;

6.  Advise the Court's Director of Support, in writing, in a timely manner of all Federal and State statutes and regulations affecting the Court's obligations under this Agreement;

7.  Make available to the Court Federal and State laws and regulations that apply to the services and actions provided under this Agreement;

8.  Interpret Federal Regulations concerning the Child Support Enforcement Program and develop operating procedures for the State;

9.  Provide personal service of subpoenas under contractual arrangement when the Court requires it;

10. Process Federal and State Income Tax Intercept off-sets and unemployment compensation intercepts;

11. Reimburse the Court at the applicable Federal Financial Participation Rate for its costs incurred in carrying out the provisions of this Agreement, based on the conditions set forth in Section VI "Financial Requirements";

12. Process appeals resulting from any reimbursement disallowances, and

4

001288

13. Provide a written explanation to the Court's Executive Assistant for Support on any reasons for a disallowance.

Under 45 CFR 303.20 (b)(2), the Division has the responsibility to monitor cooperative arrangements to ensure effective implementation of the terms of the cooperative agreement and to identify any problems that may affect the delivery of services promised under the agreement.

In general, **the Court** shall have the responsibility to process all IV-D cases in accordance with the terms of this Agreement and the performance standards set forth in the Administrative Plan that is in effect between the Division and the Court.

**The Court shall have the further responsibility to:**

A. Refer all Title IV-D cases to the Division for appropriate services, including:

    1. TANF cases where the client received TANF in a state other than Delaware;

    2. Non-TANF cases where the individual to whom support is owed applies for IV-D services in accordance with the State Plan;

    3. Former TANF cases where arrears are owed to the State of Delaware;

    4. Interstate cases in accordance with 45 CFR 302.36.

B. Appoint an Executive Assistant for Support to manage the IV-D activities for the Court.

C. Administer the Court activities performed under this Agreement uniformly throughout the State, inform Court staff of IV-D policies, standards, procedures, etc., and conduct regular, planned examinations and evaluations of its operations in each county.

D. Establish and utilize written procedures with respect to IV-D activities performed by Family Court under this Agreement.

E. Maintain the records necessary for the proper and efficient operation of the child support program, including audit purposes, application for child support services, any fees or other income derived from IV-D activities, administrative costs, statistical, fiscal, and any other records necessary for reporting and accountability required by the Office of Child Support Enforcement (OCSE). Comply with the retention and custodial requirements for these records that are prescribed in 45 CFR Part 74.

001289

F. Cooperate with audits or any other reviews that are required by OCSE, including making available records or other documentation that auditors may find necessary in order to complete or conduct their audit.

G. Advise the Division, in writing and in a timely manner, of any changes in law, policy, or procedure which the Court becomes aware of that may affect the establishment and enforcement of child support obligations.

· H. Prepare invoices for the reimbursement of expenditures in accordance with State requirements, Division guidelines, and the Administrative Plan.

I. Report to the Division all cases wherein there is suspicion of fraud or misuse of TANF funds, and

J. Provide sufficient office space in Family Court buildings for the Deputy Attorneys General assigned to represent the Division's cases and for holding mediation conferences.

## IV. Specific Responsibilities for Genetic Testing

A. The Division will attempt to secure funding for genetic testing and thereafter pay all any or all such vendors directly.

B. The Court shall verify genetic testing services by providing the name and social security number of the respondent as well as the custodial parent, and further shall include the date of service.

C. By the filing of a petition for support, the Division will be deemed to have consented to genetic testing in all IV-D cases where paternity is at issue, unless an objection to such testing is made in writing to the master or judge assigned to the case prior to the time the testing is ordered. If such an objection is made, the Court shall conduct a hearing to determine whether genetic testing is necessary, and/or whether the Division or the non-custodial parent shall advance the cost of such testing.

D. In all TANF cases where paternity is established, the Court, in addition to determining amount of support, will assess the costs of genetic testing against the non-custodial parent (NCP) unless he is found to be indigent. Where the NCP is not indigent, the cost of genetic testing will be assessed against such NCP and it will be directed that subsequent reimbursement payments should be made payable to the Division. In all IV-D non-TANF paternity cases, regardless of whether paternity is established, the Court shall conduct a hearing to assess the cost of genetic testing to either the mother or the father. Payments made under such orders shall be forwarded to the Division of Child Support Enforcement.

6

### ministrative Plan

: rarties shall agree upon an updated Administrative Plan which will be executed owing implementation of the relevant provisions of the Personal Responsibility Work portunity and Reconciliation Act (PRWORA) of 1996. The Plan will effectuate the ectives and goals of this Agreement and will define performance standards which meet leral requirements. The Administrative Plan will be incorporated into this Agreement reference. The Plan shall clearly define the operational responsibilities of both the ision and the Court.

### ancial Requirements

The Court shall comply with all provisions of 45 CFR 303.107 relative to Federal Financial Participation.

The percentage rate of annual increase in the proposed costs of the Court may **not** exceed the percentage rate of increase in the Division's child support collections for the four quarters preceding the Court's submission of proposed costs. Upon approval, the Court's proposal shall impose limits upon its costs for the respective periods unless approval for additional costs is issued by the Division.

Notwithstanding provisions in the approved annual cost projections, prior specific roval must be given by the Division for judicial training and related travel, ADP velopment or enhancements, renovations, or the purchase of any non-expendable property costing more than the allowable amount specified in Federal Regulations and Regional OCSE Guidelines, if to be used as items for reimbursement. Approval shall be denied by the Division only for good cause.

Claims for Federal Financial Participation in the cost of equipment will be determined in accordance with Subpart G of 45 CFR Part 95 and Regional OCSE Guidelines. These requirements also include provisions describing the management and disposition of this equipment.

If performance standards specified in Federal Regulations and/or the Administrative Plan are not met, the Court will be required to take corrective action within a time frame agreed upon by both parties.

If, as a result of federal audit findings, monetary penalties are sustained by the State as an outgrowth of inadequate performance by the Court under this Agreement, the Court shall bear a proportionate share of the penalty based on the Court's share of expenditures for the program, if incentive dollars received by the State are insufficient to cover the assessed penalty.

001291

G. If the Court is to claim Federal Financial Participation for Indirect Costs incurred on behalf of IV-D clients, it must determine the amount of reimbursement by implementation of the methodology set forth in the cost allocation plan developed by David M. Griffith & Associates, Ltd., as modified annually, and subject to the approval of the Division and review by OCSE. The Indirect Cost Allocation Plan must be in compliance with the Federal standards governing indirect cost contained in 45 CFR Part 304 and OMB Circular A-87.

H. The Court will submit a quarterly bill to the Division, on the forms provided, by no later than the 20th calendar day of September, December, March, and June, for each month for all actual allowable direct and indirect expenditures incurred under this Agreement in the preceding month. Allowable expenditures will be those indicated as eligible under 45 CFR Part 304 for Federal Financial Participation and other applicable Federal regulations.

I. The Court shall reduce expenditures claimed under this Agreement by the amount of fees or any other income derived from IV-D activities (excluding IV-D application fees forwarded to the Division).

J. Should any claimed expenditure for Federal Financial Participation subsequently be disallowed, the Court will reimburse the Division in the amount of the disallowances, by an off-set against future Court bills submitted to the Division as the situation may dictate. These funds shall be reinstated should the disallowance be reversed.

K. The Division will promptly reimburse the Court for all actual allowable direct and indirect expenditures incurred under this Agreement at the applicable Federal Financial Participation rate. In the event that the Delaware General Assembly or the U.S. Congress should fail to appropriate the required monies to sustain the Agreement, either party may cancel this Agreement upon sixty (60) days written notice.

L. Claims for Federal Financial Participation for the cost of equipment under the Child Support Enforcement Program will be determined in accordance with Subpart G of 45 CFR Part 95 and Regional OCSE guidelines. Requirements concerning the management and disposition of equipment under the Child Support Enforcement Program are also prescribed in Subpart G of 45 CFR Part 95.

M. A listing of some of the major items which are and are not eligible for Federal Financial Participation is contained in the following section of this Agreement. The Court, however, is cautioned to refer to the appropriate sections of the most recent edition of the Code of Federal Regulations (CFR) for the complete list of reimbursable and non-reimbursable items for the conditions which pertain to each. As noted earlier, these regulations are found at 45 CFR 304 (Federal

001292

Financial Participation), 45 <u>CFR</u> 74 (Administration of Grants), and OMB Circular A-87.

**N.  The following costs incurred by the Court in connection with its activities related to IV-D child support cases <u>qualify for Federal Financial Participation</u>:**

1.  The establishment of paternity and the establishment, modification, or enforcement of child support obligations including investigation and litigation, location activities, financial evaluation of non-custodial parents, interstate activities, and the use of all civil and criminal actions available for child support enforcement;

2.  Referral of potential IV-D clients to the Division;

3.  All activities related to the establishment and maintenance of case records, and the financial and statistical reporting of child support enforcement activities;

4.  Reasonable and essential short-term training of staff assigned on a full or part-time basis to child support enforcement functions;

5.  Necessary and reasonable travel expenses;

6.  A proportionate share of operating and overhead expenses such as utilities, office rent, photocopy expenses, data processing services, etc., charged on the basis of a Federally-approved Court indirect cost allocation plan;

7.  Indirect Costs, to be computed as set forth in Section XII, "Financial Requirements," of the Administrative Plan, and

8.  All other activities relating to IV-D activities not prohibited by Federal or State laws, rules, or regulations.

**O.  Federal Financial Participation is <u>not</u> available for:**

1.  Purchased services which are not secured in accordance with 45 <u>CFR</u> 304.21;

2.  Construction and major renovations;

3.  Education and training programs and educational services, except for the direct cost of short-term training provided to the Court staff or pursuant to 45 <u>CFR</u> 304.21;

001293

4. The cost of counsel for indigent respondents in IV-D actions as set forth in 45 <u>CFR</u> 304.23(j);

5. Service of process and Court filing fees, unless the Court or a State law enforcement agency would normally be required to pay the cost of such fees, pursuant to 45 <u>CFR</u> 304.21;

6. The cost of compensation and fringe benefits for judges;

7. The cost of travel or training incurred by judges, except for IV-D activities which have received **prior Division approval**.

8. Office-related costs, such as office space, equipment, furnishings, and supplies for judges, as well as secretaries, stenographers, and legal assistants assigned to the Judiciary, pursuant to OCSE-AT-83-1.

## VII. <u>Confidentiality of Records</u>

The Court shall have access to all necessary records and information which the Division can provide. Access to this information shall be subject to all relevant State and Federal laws, rules, and regulations providing for the safeguarding of information. The records and information received by the Court in the execution of the child support enforcement program shall be used exclusively for the purposes of that program. The use or disclosure of any information obtained through the Federal Parent Locator Service (PLS) or information concerning IV-D applicants or clients, is **limited to** purposes directly connected with:

1. The administration of the IV-D program.

2. Any investigation, criminal prosecution, or civil proceedings conducted in connection with the administration of the IV-D program.

3. The administration of any other Federal or Federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need.

B. Disclosure of information that identifies an applicant or client by name or address to any committee or legislative body (Federal, State or local) is prohibited.

C. None of the information which is shared between the Court and the Division is to be furnished to any other individuals, users, or agencies **except for the express purpose of child support enforcement**.

001294

D. The Court and the Division will ensure that no data obtained from the files of either party shall be downloaded to a micro-computer, personal computer, or any other type of computer.

E. Address or asset information obtained from the Internal Revenue Service is subject to the recordkeeping and safeguarding requirements of the Internal Revenue Code at 26 U.S.C. 6103(p)(4).

F. Section XI, Safeguarding Information, page 28 of the Administrative Plan outlines responsibilities for the use and disclosure of information by each party to this Agreement.

## VIII. Recordkeeping and Reporting Requirements

A. The Court shall submit reports in conformance with 45 CFR 302.15.

B. The Court shall maintain individual case records adequate to permit evaluation of the progress of each case. Such case records must include, but need not be limited to, original or properly archived referral documents, records of all contacts with non-custodial parents, and records of all legal actions. All records and documentation referring to IV-D cases handled by the Court shall be maintained in accordance with Federal Regulations, as advised by the Division, and shall be made available to State or Federal personnel for the purpose of conducting audits or other reviews of the child support enforcement program.

C. The Court shall provide data to support claims for Federal Financial Participation, and shall maintain records adequate for the purpose of conducting an audit.

D. The Court shall retain financial and case records for three years from the date (October 30) on which the Division is required to submit its expenditure report to OCSE for the last quarter of the Federal fiscal year.

## IX. Successors/Assigns Paragraph

The terms and conditions set forth in this Agreement shall not be assigned by one party without the prior written consent of the other party. Any transfer of the terms and conditions set forth in this Agreement by process of law shall be deemed an assignment by both parties.

## X. No Waiver

The failure of either party to insist upon the strict performance of the terms and conditions hereof shall not constitute or be construed as a waiver or relinquishment of either party's right to thereafter enforce the same in accordance with this

001295

Agreement in the event of a continuing or subsequent default on the part of the other party.

## XI.    Notice and Changes of Address

All "Notices" to be given by either party to the other shall be in writing and must be either delivered or mailed by registered or certified mail, return receipt requested, and addressed as follows:

      THE COURT:          Chief Judge
                                 Family Court
                                 900 King Street
                                 Wilmington, Delaware 19801

      THE DIVISION:      Director
                                 Division of Child Support Enforcement
                                 1901 N. Dupont Highway, Biggs Bldg.
                                 New Castle, Delaware 19720

Either party may designate a different address for notice by serving the other party with written notice of the new address. Notices are deemed delivered or given upon actual receipt.

## XII.    Severability

In the event that any clause or provision of this Agreement or part thereof shall be declared invalid, void, or unenforceable by any court having jurisdiction, such invalidity shall not affect the validity or enforceability of the remaining portions of this Agreement, unless the result would be manifestly inequitable or unconscionable.

## XIII.    Joint Actions

Both parties will maintain such records as the Delaware Auditor of Accounts and the U.S. Department of Health and Human Services may require or as they may informally agree.

## XIV.    Correction of Errors

The Court and the Division are each responsible for promptly notifying the other party of any errors or inaccurate data which it discovers.

001296

## XV. Conclusion and Execution

A. Upon execution, this Agreement supersedes and replaces any other Cooperative Agreement under the Child Support Enforcement Program heretofore executed by the parties.

B. This Agreement contains all of the terms and conditions agreed to by the parties, and no other agreement regarding the subject matter of this Agreement shall be deemed to, exist or to bind any of the parties hereto.  Any amendments to this Agreement shall be reduced to writing, duly executed by the parties hereto, and attached to the original Agreement.

C. This Agreement may be terminated by: (a) sixty (60) days written notice prior to the date of cancellation delivered by one party to the other, or (b) by written agreement of the parties.  Each agency must attempt to promptly resolve problems or disputes before any action is taken to terminate this Agreement.

D. This Agreement may be terminated if either party violates Federal or State law or the Agreement itself and fails to take appropriate corrective action.  The Division will monitor this Agreement to ensure the effective implementation of its terms and to identify problems affecting services.

E. Subject to its other provisions and the availability of State and Federal funds, the terms of this Agreement shall commence on January 1, 1998, or as soon as practical following the terms of execution of this Agreement and terminate on June 30, 1999, and this Cooperative Agreement shall continue in full force and effect from year-to-year on the terms and conditions in effect at the end of each contract year, unless terminated as provided elsewhere in this Agreement.

F. This Agreement may be amended to incorporate revised IV-D requirements and/or changes to State and Federal laws, if changes in any applicable laws or regulations require such amendments in order that full conformity is achieved and maintained.

G. All renewal, alterations, modifications, or waivers of the provisions of this Agreement shall be valid only when they have been reduced to writing, duly executed by the parties hereto, and attached to the original Agreement.

H. Execution is contingent upon State and Federal approval of this Agreement, and the existence of those positions necessary to effectuate the provisions of Article III of this Agreement.

001297

I. In the event of a conflict between the Cooperative Agreement and the Administrative Plan, the terms of the Cooperative Agreement shall be controlling.

fc-agree

001298

## XVI. Authorized Signatures

**IN WITNESS WHEREOF**, the parties hereto have caused this Cooperative Agreement to be executed by their officials thereunto duly authorized effective this _____ day of _____, 1997.


_____          _____
Gregg C. Sylvester, MD                    Date
Acting Secretary
Delaware Health and Social Services


_____          _____
Karryl D. Hubbard                              Date
Acting Director
Division of Child Support Enforcement


_____          _____
Vincent J. Poppiti                                Date
Chief Judge
Family Court

001299