IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELBERTA BERNICE LIEBERMAN,            )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        C.A. No. 96-523-GMS
                                      )
THE STATE OF DELAWARE,                )
THE FAMILY COURT OF THE               )
STATE OF DELAWARE                     )
                                      )
                Defendants.           )


**PLAINTIFF ELBERTA BERNICE LIEBERMAN'S
ANSWERING BRIEF IN OPPOSITION TO THE
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
<u>ON THE SUBSTANTIVE ISSUES</u>**


MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
emcnally@morrisjames.com
Attorneys for Plaintiff
Elberta Bernice Lieberman

July 15, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT .............................................................................. 3

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT: ......................................................................................................... 7

I.    PLAINTIFF'S DISABILITY THAT AROSE AFTER
      SHE WAS FORCED OUT OF HER JOB IS NO BAR
      TO HER CLAIM THAT BEFORE SHE WAS
      TERMINATED HER RIGHTS UNDER THE
      REHABILITATION ACT WERE VIOLATED ................................................ 7

      1.    Introduction ........................................................................................ 7

      2.    There Is No Necessary Inconsistency Between Being
            Disabled But Being Able To Work With Accommodations ................. 7

      3.    Lieberman Has Suffered An Adverse
            Employment Decision .......................................................................... 9

      4.    Conclusion .......................................................................................... 11

II.   A COMPLAINT FILED WITH *IN FORMA PAUPERIS*
      PETITION IS CONSTRUCTIVELY FILED WHEN THE
      CLERK RECEIVES THE COMPLAINT, NOT WHEN THE
      *IN FORMA PAUPERIS* PETITION IS GRANTED ............................................ 12

      1.    Introduction ........................................................................................ 12

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*Barnes v. Gorman,*
    536 U.S. 181 (2002)........................................................................................10

*Elberta Bernice Lieberman v. State of Delaware,*
    No. 01-3540 (3d Cir., July 14, 2003) .............................................................1

*Cleveland v. Policy Management Systems Corporation,*
    526 U.S. 795 (1999)...................................................................................7, 8, 9

*Detz v. Greiner Industries, Inc.,*
    346 F.3d 109 (3d Cir. 2003).........................................................................8, 9

*Harrison v. State of Delaware,*
    1996 WL 790101 (D. Del.) .............................................................................8

*Kennelly v. Pennsylvania Turnpike Com'n,*
    208 F. Supp. 2d 504 (E.D. Pa. 2002) .............................................................8

*Mack v. Salarna,*
    684 F. Supp. 865 (E.D. Pa. 1988) ................................................................12

*Marvel v. Prison Industries, Inc.,*
    2000 WL 1239962 (D. Del.) .........................................................................13

*McDowell v. Delaware State Police,*
    88 F. 3d 188 (3d Cir. 1996)..........................................................................12

*Meester v. Runyon,*
    149 F.3d 855 (8th Cir. 1998) .......................................................................10

*Molina v. City of Lancaster,*
    159 F. Supp. 2d 813 (E.D. Pa. 2001) ...........................................................12

*Montrose Medical Group Participating Savings Plan v. Bulger,*
    243 F. 3d 773 (3d Cir. 2001)..........................................................................9

*Motley v. New Jersey State Police,*
    196 F.3d 160 (3d Cir. 1999)...........................................................................8

*Move Organization v. City of Philadelphia,*
    530 F. Supp. 764 (E.D. Pa. 1982) ................................................................13

*Norman v. Univ. of Pittsburgh,*
    2002 WL 32194730 (W.D. Pa.) ............................................................................8, 9

*Taylor v. Phoenixville School District,*
    184 F.3d 296 (3d Cir. 1999) ...................................................................................10

*Tennessee v. Lane,*
    541 U.S. 509 (2004) ..................................................................................................1

*W.B. v. Matula,*
    67 F.3d 484 (3d Cir. 1995) .....................................................................................10

*Williams v. Philadelphia Housing Authority Police Department,*
    380 F.3d 751 (3d Cir. 2004) ...................................................................................10

## **Statutes and Other Authorities**

Title II of *Americans With Disabilities Act*
    42 U.S.C. § 12101, *et seq.* ........................................................................................1

Section 504 of the *Rehabilitation Act,*
    29 U.S.C. § 701, *et seq.* ............................................................................................1

28 U.S.C. § 1915 ................................................................................................12, 13

29 U.S.C.A. § 791(g) ...............................................................................................10

42 U.S.C.A. § 12111(9) ............................................................................................10

Fed. R. Civ. Pro. 3 ....................................................................................................13

## NATURE AND STAGE OF PROCEEDINGS

This is an action arising out of the forced retirement of the plaintiff Elberta Bernice Lieberman ("Lieberman") by defendants Family Court of the State of Delaware and the State of Delaware (collectively the "State"). While this case was filed in 1996, it really became active when counsel was appointed for Lieberman and she filed an Amended Complaint on May 17, 2001 (D.I. 42).

The Amended Complaint alleged that the State had: (1) violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* (the "ADA Claim"), (2) violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq* (the "Rehabilitation Act Claim"), and (3) retaliated against Lieberman for filing her ADA and Rehabilitation Act Claims. (*Id.*).

The State then filed a motion to dismiss the Amended Complaint on May 23, 2001 (D.I. 43). After briefing, this Court on August 30, 2001 issued its Memorandum and Order (D.I. 48) (the "Opinion"). The Opinion dismissed the ADA Claim , but sustained the Rehabilitation Act Claim, holding that the State had 11th Amendment immunity for the ADA Claim but not for the Rehabilitation Act Claim.[1] The State promptly appealed to the United States Court of Appeals for the Third Circuit (D.I. 49). On July 14, 2003, the Third Circuit affirmed this "Court's thoughtful determination" upholding the Rehabilitation Act Claim.[2] The State's Petition for Rehearing *En Banc* was denied on August 22, 2003 (D.I. 53).

On June 15, 2005, the State filed its Motion For Summary Judgment on The Substantive Issues (the "SJ Motion") and Opening Brief (D.I. 86). The SJ Motion makes three primary

---

[1] Recently, the Supreme Court has clarified the law of 11th Amendment immunity under the ADA and, as a result, Lieberman is considering asking the Court to revisit its holding dismissing the ADA Claim. *See Tennessee v. Lane,* 541 U.S. 509, 124 S. Ct. 1978, 158 L.Ed.2d 820 (2004).

[2] *Elberta Bernice Lieberman v. State of Delaware*, No. 01-3540, (3d Cir., July 14, 2003)

arguments: (1) Lieberman is so disabled that she is "not capable of working" since she was forced out of her job and thus is not qualified to hold her job, (2) Lieberman is precluded from pursuing her claim because she has accepted disability payments, and (3) Lieberman's claims are time barred.

This is Lieberman's answering brief in opposition to the State's SJ Motion. Every one of the State's arguments is wrong as a matter of law

---

at 4 (D.I. 51).

## SUMMARY OF ARGUMENT

1.      Plaintiff's disability that arose after she was forced out of her job is no bar to her claim that before then her rights under the Rehabilitation Act were violated.

2.      A complaint filed with *in forma pauperis* petition is constructively filed when the Clerk receives the complaint, not when the *in forma pauperis* petition is granted.

## STATEMENT OF FACTS

Bernice Lieberman graduated from the University of Delaware in 1968, with a Bachelors Degree in Psychology. She then sought to continue her education with post-graduate work, but eventually withdrew because of lack of funds. After several years working at the Delaware State Hospital and Terry Children's Psychiatric Center in various roles using her psychology training, in 1974 Lieberman began her twenty-year career with the Family Court of the State of Delaware.[3]

In her early years at Family Court, Lieberman steadily advanced. She started as a counselor, meeting with juveniles and their parents, doing pre-sentence reports and other related work. By 1977 she was the Coordinator of Referral Services for Juvenile Delinquents, working as a liaison with community groups and Family Court. In 1978 she was chosen to co-write a major grant proposal for a three-year federally-funded restitution program for juvenile offenders and she then became the Restitution Project Coordinator for that project, supervising five counselors and other staff and making sure that the Project was being used statewide according to the federal grant's requirements.

Nonetheless, throughout this period Lieberman suffered from mental illness. Starting in 1981 after Family Court lost a three year grant that Lieberman had worked hard to bring to the Court, she several times was hospitalized and took temporary leaves of absence for her disability, all approved by Family Court and the State. She also had some physical illnesses, such as breast cancer, from which she recovered in time. But despite these illnesses, Lieberman consistently was given positive evaluations and merit pay raises, except for one year, and was able to do her

---

[3] The facts set forth here are verified and supported by the Lieberman Affidavit, filed on December 6, 2004 (D.I. 68), at the time the state first filed a summary judgment motion on these grounds. (That motion was later withdrawn). A supplemental Lieberman affidavit is being filed

work. (Lieberman Aff., Ex. "G").

In 1987, Lieberman's illnesses required her to step back in her career and take a less demanding job, first as an investigative services officer and then as a mediation/arbitration officer for Family Court. While she continued her treatment for mental illness, she also was able to perform her job well enough to earn positive job reviews and raises.

Through the summer of 1993 Lieberman continued to perform mediations as she struggled to cope with her illnesses. On November 17, 1993, she received a memorandum from Kathleen Donofrio that was shared with Ms. Ana DePaul and Court Administrators, Mr. Pollard and Mr. Williams. The Family Court agreed that if Ms. Lieberman heard the same number of cases as the other mediators, she might use flextime to offset the time missed per week due to psychiatric appointments. She complied with this plan. However, Family Court did not give Lieberman the agreed-upon job restructuring accommodations and required her to use her sick time to cover the time spent on her therapy.

In January 1994, on the recommendation of the Delaware Department of Labor, Lieberman was evaluated by Lynn Erb, Ph.D., a learning disabilities specialist. Dr. Erb's 1994 evaluation of Lieberman concluded that she "certainly has the writing ability and verbal ability to perform her job well." Dr. Erb provided an evaluation that listed the accommodations related to Ms. Lieberman's attention deficit hyperactivity disorder that would permit her to perform her work. Randall E. Williams, after reviewing Dr. Erb's recommendations, agreed that the Family Court should explore job accommodations that would permit Lieberman to perform her work at the Family Court. In August, 1994 Lieberman advised Ms. Donofrio that the accommodations that she had been promised were not taking place and that she needed those accommodations to

---

with this brief ("Lieberman Supp. Aff. __").

be able to complete her work in a timely fashion. More specifically, she needed one and one-half hours a week after hours to be able to do paperwork to make up for the hour and one-half she requested to attend psychotherapy with Dr. Stehle.

Notwithstanding that she was basically up to date with her mediations and other responsibilities, on October 28, 1994, Lieberman was advised that she been recommended for dismissal. The grounds for that recommendation were not accurate because she was up to date with her work and had additional medical leave.

After she was forcibly escorted from the Family Court, Lieberman's mental illness overcame her and she was hospitalized. Her treating physician attributed this increase in the severity of her illness to the loss of her job at Family Court, a job that was central to her sense of personal worth. (Lieberman Aff., Ex. "H"). Had she been accommodated by Family Court in 1993 and 1994, she would not have become seriously ill and could have continued to perform her job. (*Id.*).

## ARGUMENT

I. **PLAINTIFF'S DISABILITY THAT AROSE AFTER SHE WAS FORCED OUT OF HER JOB IS NO BAR TO HER CLAIM THAT BEFORE SHE WAS TERMINATED HER RIGHTS UNDER THE REHABILITATION ACT WERE VIOLATED**

1.   Introduction

The State's first substantive argument is that because Lieberman became disabled <u>after</u> she left the Family Court, she has no rights under the Rehabilitation Act for events that occurred <u>before</u> she left the Family Court.  (State Br. at 10).  Why that necessarily follows is never made clear.  Indeed, the State's argument seems akin to claiming that an employee injured by his employer's deliberate acts that render him unable to work cannot recover his lost wages because he is disabled and could never have earned those wages.  This is circular and would, if accepted, sanction deliberate violations of the ADA and Rehabilitation Act that disabled an employee.  In fact, the State's argument has been repeatedly rejected.

2.   There Is No Necessary Inconsistency Between Being Disabled But Being Able To Work With Accommodations

At least since the 1999 *Cleveland* decision, a person may both obtain disability benefits and pursue an ADA or Rehabilitation Act claim.[4]  As *Cleveland* explained:

> an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it.[5]

---

[4]   *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999) (hereinafter "*Cleveland*").

[5]   526 U.S. at 803.

Both the Third Circuit[6] and this Court[7] have applied *Cleveland* to hold that disability and ADA/Rehabilitation Act claims may co-exist.

Indeed, *Harrison* is very similar to the facts that this uses. There, as here, the plaintiff in *Harrison* sought reasonable accommodations from the State of Delaware, was denied those accommodations to the point where she could no longer perform her State job, and then obtained a disability pension as a last resort. In its pre-*Cleveland* decision, this Court held that the plaintiff's ADA claim could go forward. So too here.

*Cleveland* and its prodigy allow an ADA or Rehabilitation Act claim when the plaintiff offers a reasonable explanation as to why her Rehabilitation Act claim is not inconsistent with her claim of disability. Lieberman has done just that in this case. She is now disabled because the State violated her rights to reasonable accommodation, drove her from her job and thereby made her thereafter unable to work. There is no inconsistency between claiming she could have done her job in 1994 and now asserting her disability.

There is one case that is particularly analogous to Lieberman's situation. In *Norman v. Univ. of Pittsburgh*, 2002 WL 32194730 (W.D. Pa. Sept. 17, 2004) (attached hereto as Exhibit B), the Court found that the acceptance of an SSDI pension and the statements made by the plaintiff were not consistent with an ADA claim. The Court found that the plaintiff had offered a "sufficient explanation" by arguing that the Defendant's failure to offer a reasonable accommodation when her disability was limited actually led to her total disability. *Id.* at *9 (citing *Kennelly v. Pennsylvania Turnpike Com'n*, 208 F. Supp.2d 504, 512-13 (E.D. Pa. 2002)).

---

[6]  *See, e.g.*, *Motley v. New Jersey State Police*, 196 F.3d 160 (3d Cir. 1999); *Detz v. Greiner Industries, Inc.*, 346 F.3d 109 (3d Cir. 2003).

[7]  *Harrison v. State of Delaware*, 1996 WL 790101 (D. Del. Dec. 30, 1996) (hereinafter "Harrison") (attached hereto as Exhibit "A").

According to the Court:

> [S]he suffered her emotional breakdown when she was told by her supervisor that the accommodation requested was not going to be provided and she would just have to do the job. A reasonable jury could conclude that the change in her status from a qualified individual with a disability who was able to work with an accommodation to an individual who was totally disabled (if such a change occurred) was precipitated by Defendants' failure to accommodate her disability.

*Norman*, 2002 WL 32194730, at *9. Therefore, a plaintiff's rights may have been violated at a time when she was a qualified individual. Subsequently becoming totally disabled as a result of the discrimination does not shelter the wrongdoer from liability. *See id.*

It is worth noting that Plaintiffs ask the Court to apply the wrong standard. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001) did not involve the ADA, Rehabilitation Act, or any analogous provision. It is a general judicial estoppel case applying the Third Circuit's three-pronged judicial estoppel test. *Id.* at 779-80. However, in ADA and other analogous claims, the Third Circuit has found that test to be inapplicable in the aftermath of *Cleveland*. *Detz*, 346 F.3d at 117-118 (3d Cir. 2003) ("We have similarly applied *Cleveland* – rather than our traditional three-step "judicial estoppel" approach – as the guiding force in the context of a summary judgment motion where, as here, the claimant clearly made a contradictory assertion after benefiting from a previous sworn assertion, the court or agency thus having accepted the previous assertion.").

3.    Lieberman Has Suffered An Adverse Employment Decision

The State also argues that Lieberman has "not suffered an adverse employment action" because she receives a disability pension. (State Br. at 10). Apparently, the State believes that if Lieberman's disability pension equals her 1994 Family Court pay that there is no remedy for the

State's violation of the Rehabilitation Act. That too is legally incorrect.

To begin with, the State's argument ignores the point that not providing reasonable accommodations to Lieberman was itself an adverse employment decision. The law is settled that "[a]dverse employment decisions in this context include refusing to make reasonable accommodations for the plaintiff's disabilities."[8] Thus even if Lieberman had not been forced out at Family Court, the State violated the Rehabilitation Act.

Moreover, once that Act was violated, Lieberman is entitled to damages and her attorney fees.[9] In Lieberman's case those damages would include, *inter alia*, compensation for the reduced pension she is receiving as a result of being forced out in 1994 instead of earning the higher pension benefits she would have received had she stayed at Family Court after 1994.

The key point here is that there is a factual dispute over whether *prior to* Lieberman's termination and subsequent hospitalization the State had fulfilled its duty to interact with her and provide her with reasonable accommodations. According to 42 U.S.C.A. § 12111(9) a reasonable accommodation may include "job restructuring" or "modified work schedules."[10] This dispute surely precludes summary judgment here.[11]

---

[8] *Williams v. Philadelphia Housing Authority Police Department,* 380 F.3d 751, 761 (3d Cir. 2004).

[9] *See, e.g. Barnes v. Gorman* 536 U.S. 181 (2002); *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995) ("We...hold that plaintiffs may seek monetary damages directly under § 504" of the Rehabilitation Act.)

[10] Pursuant to 29 U.S.C.A. § 791(g), the standards used to determine whether the Rehabilitation Act have been violated are the same as those under the Americans with Disabilities Act of 1990. Therefore, 42 U.S.C.A. § 12111(9) provides the appropriate definition of "reasonable accommodation." *See Meester v. Runyon*, 149 F.3d 855, 858 (8th Cir. 1998) (applying ADA's definition of reasonable accommodation in Rehabilitation Act case).

[11] *Taylor v. Phoenixville School District*, 184 F.3d 296 (3d Cir. 1999) (summary judgment reversed because of such a dispute).

4.    <u>Conclusion</u>

The State cannot violate the Rehabilitation Act, cause Lieberman to become disabled and then rely on what it did to her to escape liability.  She did suffer an adverse employment decision by a matter of law.  Hence, the State is not entitled to summary judgment.

## II.    A COMPLAINT FILED WITH *IN FORMA PAUPERIS* PETITION IS CONSTRUCTIVELY FILED WHEN THE CLERK RECEIVES THE COMPLAINT, NOT WHEN THE *IN FORMA PAUPERIS* PETITION IS GRANTED

1.    <u>Introduction</u>

Lieberman filed her original complaint on October 22, 1996, with a request to waive the fee pursuant to 28 U.S.C. § 1915, otherwise known as an *in forma pauperis* petition.  (Lieberman Supp. Aff. ¶3, Exhibit "A").  28 U.S.C. § 1915 "is designed to provide access to the federal courts to indigent litigants."  *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 817 (E.D. Pa. 2001).  Accordingly, in the Third Circuit, when a plaintiff files an *in forma pauperis* petition, the complaint is "constructively filed" despite the fact that the filing fee has not been paid. *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996) ("Although a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed as of the date that the clerk received the complaint--as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*.").

In *McDowell,* there was a two-year statute of limitations, and the plaintiff filed his complaint on October 25, 1993, barely within the two years of October 26, 1991.  McDowell later filed an *in forma pauperis* petition.  Finding that the Complaint had been constructively filed as of October 25, 1993, the Third Circuit stated:

> Therefore, once the filing fee requirement is satisfied (either through remittance of the filing fee or the district court's grant of the plaintiff's IFP application), the filing date will relate back to the date on which the clerk received plaintiff's papers.  In the present case, because the district court ultimately granted McDowell leave to proceed *in forma pauperis,* we conclude that McDowell's complaint was constructively and timely filed on October 25, 1993.

*Id.*; *see also Mack v. Salarna*, 684 F. Supp. 865, 866 (E.D. Pa. 1988) ("Filing an *in forma*

*pauperis* petition under 28 U.S.C. § 1915 with an accompanying complaint amounts to commencement of an action against those parties named in the complaint even though the complaint cannot technically be filed with the Clerk of Court until the court has granted plaintiff leave to proceed *in forma pauperis*."); *Move Organization v. City of Philadelphia*, 530 F. Supp. 764, 766 (E.D. Pa. 1982). ("Filing an in forma pauperis petition under 28 U.S.C. §1915 with an accompanying complaint commences the action within the meaning of Fed. R. Civ. Pro. 3.")

Significantly, in *Marvel v. Prison Industries, Inc.*, 2000 WL 1239962 (D. Del. Aug. 24, 2000) (attached hereto as Exhibit C), this Court was faced with a situation very similar to Lieberman's. The defendants argued that the two year statute of limitations had run because the complaint was seemingly filed on March 2, 1999, more than two years after his February 14, 1997 injury. *Id.* at \*3. In reality, the plaintiff had filed the complaint on February 12, 2004 with an *in forma pauperis* petition. The Court did not grant the petition until March 2, 2004. This Court found that the complaint had been "constructively filed" on February 12, 2004 because the plaintiff filed an *in forma pauperis* petition with the complaint. *Id.* Therefore, the Court rejected the defendants' argument that the statute of limitations had run. *Id.*

Here, Lieberman filed her complaint and application to proceed *in forma pauperis* on October 22, 1996, days <u>before</u> the State argues the statute of limitations applies. All of the State's argument mistakenly assumes her complaint was filed on "October 31, 1996." (State Br. at 10). Misled by the docket sheet, the State is just wrong. Hence, its argument is wrong too and its motion should be denied.[12]

---

[12] The State is also wrong that the violations of Lieberman's rights ended in October, 1996. They continued thereafter. *See* Lieberman Supp. Aff. "Ex. B".

CONCLUSION

For the reasons set forth in this brief, the State's summary judgment motion should be denied.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____
Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
emcnally@morrisjames.com
Attorneys for Plaintiff
Elberta Bernice Lieberman

July 15, 2005

**EXHIBIT A**

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
1996 WL 790101 (D.Del.), 22 A.D.D. 1101
**(Cite as: 1996 WL 790101 (D.Del.))**

**Motions, Pleadings and Filings**

United States District Court, D. Delaware.
Arie L. HARRISON, Plaintiff,
v.
STATE OF DELAWARE THE DEPARTMENT OF
SERVICES FOR CHILDREN, YOUTH & THEIR
FAMILIES, Defendant.
**No. Civ.A. 95-406-SLR.**

Dec. 30, 1996.

Employee sued her employer for employment discrimination in violation of Americans with Disabilities Act (ADA). Employer moved for summary judgment. The District Court, Sue L. Robinson, J., held that: (1) employee's assertion, in her claim for disability pension benefits, that she was unable to work, did not, pursuant to doctrine of judicial estoppel, bar her from also bringing ADA claim in which she alleged she was able to work, and (2) material fact question regarding whether employee was unable to perform essential functions of her job precluded summary judgment.

Denied.

West Headnotes

**[1] Estoppel** ⬤⟿68(2)
156k68(2) Most Cited Cases
Employee's assertion, in her claim for disability pension benefits, that she was unable to work, did not, pursuant to doctrine of judicial estoppel, bar her from also bringing ADA claim in which she alleged she was able to work, absent evidence of bad faith. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[2] Federal Civil Procedure** ⬤⟿2497.1
170Ak2497.1 Most Cited Cases
Material fact question regarding whether employee of Department of Services for Children, Youth and their Families, who suffered from hepatitis C, was unable to perform essential functions of her job, including investigating reports of child abuse, neglect, or dependency, precluded summary judgment on employee's ADA claim. Americans with Disabilities

Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

Laurence V. Cronin, of Smith Katzenstein & Furlow, Wilmington, Delaware, for plaintiff.

Janice R. Tigani, Deputy Atty Gen., Dept of Justice, Wilmington, Delaware, for defendant.

*MEMORANDUM OPINION*

ROBINSON, District Judge.

I. INTRODUCTION

*1 In June 1995, Arie L. Harrison initiated suit *pro se* in this court against defendant State of Delaware, Department of Services for Children, Youth and their Families (referred to either as "defendant" or "the Department") alleging a violation of her rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* and for compensatory and punitive damages under 42 U.S.C. § 1981a. (D.I. 1) Defendant responded with a motion for summary judgment. (D.I. 6) The court appointed counsel to represent plaintiff and, after completion of discovery, defendant's renewed motion (D.I. 33) was briefed and argued.

For the reasons that follow, defendant's motion shall be denied.

II. FACTS

Plaintiff Harrison has been diagnosed as suffering from hepatitis C. Plaintiff's treating physician has described her illness as "one of variable waxing and waning symptoms," "independent of aggravating factors." (D.I. 34 at 142; D.I. 42 at 171)

Plaintiff commenced her employment with the Department in April 1992 as a Senior Family Services Specialist ("SFSS") in the investigations unit of the Department's Kent County office. As a SFSS, plaintiff was assigned cases to handle in response to reports of abuse, neglect, or dependency involving children. Her supervisor, George Roach, organized the investigations unit's work according to a set schedule, in which each employee spent approximately equal time in the office and on the road.

During the first six months of her employment,

Not Reported in F.Supp.                                                                                                              Page 2
1996 WL 790101 (D.Del.), 22 A.D.D. 1101
(Cite as: 1996 WL 790101 (D.Del.))

plaintiff requested that various accommodations be made in light of her physical limitations. In response to these requests, the Department assigned plaintiff to a car with power steering, gave her permission to wear sneakers, and allowed her some scheduling flexibility. Nevertheless, by memorandum dated November 20, 1992, plaintiff requested from Mr. Roach further help with the fit between her physical condition and the job. (D.I. 42 at 50) Mr. Roach did not respond to the memorandum.

From November 25 to November 29, 1992, plaintiff worked "emergency duty" for the first time. This duty entailed being on call after hours to respond to problems either by phone or in person. During this period of time, plaintiff documented 19 incoming telephone calls. Of those 19 calls, she was required to respond to Dover from her home in New Castle County on two occasions. Plaintiff became ill during her after-hours shift on November 29, 1992. By a physician's note dated November 30, 1992, the Department was informed that plaintiff's blood pressure had elevated, and she was unable to complete her on-call assignments. Also included in the note was the physician's request for the Department's "assistance in modifying Ms. Harrison's duties" due to her "limitations." (D.I. 34 at 32)

By memorandum dated December 4, 1992, plaintiff wrote the Chief Administrator of the Department, Ms. Ina Jorge, regarding her requests for a meeting to discuss problems she was having in adapting to her position. As stated by plaintiff in her memorandum to Ms. Jorge:

> **\*2** This letter comes to you because attempts to communicate with my agency director have failed; I have received no reply to my concerns and question. There is one exception: I have been told that I may have access to a vehicle that has power steering.
> I am new to this agency but not to social services; and I have just completed what I could of Emergency Duty during the period shown above. I must say that I am astounded by the insensitivity and the total lack of regard for my health - my life, in fact, by the director of the office in which I work.

(D.I. 34 at 59) Plaintiff closed the letter by writing: "I would appreciate your reply and no disrespect is intended towards anyone involved. But I need some answers from the Department." (D.I. 34 at 59)

When neither Ms. Jorge, nor anyone else with the Department, responded substantively to her December 4, 1992 memorandum, plaintiff again wrote to Mr. Roach on January 5, 1993, stating:

> To date, I have heard nothing from this agency regarding my situation regarding personal limitations vs job responsibilities. Therefore, I am now forced to make some very serious decisions in the absence of the agency's reply.

(D.I. 34 at 33)

Having received no response to either her December 4, 1992 or January 5, 1993 memoranda, plaintiff went to the State Pension Office to find out how she could apply for a disability pension. At the State Pension Office, plaintiff met with an employee named Dorothy Clementi. She told Ms. Clementi that while she still wanted to work for the Department, she was not hopeful that the Department would help her continue working. Ms. Clementi encouraged plaintiff to file an application for a state disability pension and stated that if she and the Department were able to work something out during the three-month waiting period, the application would simply be withdrawn. Ms. Clementi also encouraged plaintiff to apply for Social Security benefits due to the length of time it would take for her application to be processed and a decision rendered. Finally, Ms. Clementi told plaintiff that in order to commence her application for a state disability pension, all she would have to do would be to advise the personnel division of the Department in writing that she wished to apply for such a pension, and they would begin assembling the necessary paperwork. (D.I. 42 at 40-41)

On January 11, 1993, pursuant to the direction of Ms. Clementi, plaintiff sent two memoranda to Department personnel advising them that she was seeking a disability pension. First, she sent a handwritten memorandum to Kay Nemeth, a personnel technician with the Department. In the memorandum, plaintiff wrote: "Please let me know what I need to do as I can no longer work full time or carry out all my duties without incurring setbacks healthwise. I am asking for disability release." (D.I. 34 at 35) On that same day, plaintiff gave a memorandum to Ms. Brown which provided:

> For the past few months, it has become increasingly difficult for me to handle all of the responsibilities of my job and concurrently maintain good attendance. I have reached the point where it has been determined that I cannot continue in the current manner and obtain better health and longevity. For those reasons, I must remove myself from this job.
> **\*3** In that I have never received a reply or inquiry regarding the notes and letters my doctors have been sending in as early as June, 1992, I have had

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3
1996 WL 790101 (D.Del.), 22 A.D.D. 1101
(Cite as: 1996 WL 790101 (D.Del.))

to conclude that nothing can be done to accommodate me. My supervisor has been as helpful as he could and very tolerant. On the other hand, I have worked very hard and continuously to keep up with my workload so that it will not fall onto another co-worker who is already struggling with his or her own caseload. It is this pace that has begun to take a negative effect on me, physically. I can no longer handle this position in its entirety;
- spontaneous responses (physical/mental) to calls
- distance driving (all day on field days is expected)
- climbing steps (in apartments and houses)
- sitting in one position for hours, writing, reading, closing and/or transferring cases, filling out 10 to 12 forms on the former and almost 18 forms on the latter - per each case
- emergency duty; 7 days in total; 5 from early evening to morning, and 2 weekend days around the clock - done alone and from New Castle County to Kent County
- spending a lot of time walking, standing
Although you may not have been able to do anything about my limitations, a reply stating that would have been appreciated. I will try to work as steady as I can until January 22. I will have to take time off during these two weeks, occasionally for doctors' appointments and to simply regain my strength for the next day. I ask that you bear with me for I will still do my very best in performing my job as I always have. If there is something else I need to do in this process, please advise my supervisor if not me directly.
(D.I. 34 at 34) Copies of the memorandum were sent to Ms. Nemeth and Mr. Roach. In a postscript to the memorandum, plaintiff asked Ms. Brown to "[p] lease do not make any announcements in staff; it is not a freewill decision." Neither Ms. Brown nor Mr. Roach ever discussed this memorandum with plaintiff.

By letter dated January 19, 1993, one of plaintiff's doctors wrote to the Department as follows:
I am writing as per my letter dated November 30, 1992 regarding the work limitations of Ms. Harrison. I understand that it is not possible for you to accommodate Ms. Harrison's need for limited duties. Would you please indicate any type of limitations that you would find appropriate so that we may agree and allow Ms. Harrison the opportunity to continue working with you.
(D.I. 34 at 36-9; D.I. 42 at 52)

At about the same time and in response to plaintiff's disability inquiry, Ms. Brown wrote to plaintiff's

doctors. (D.I. 34 at 36-39) Those letters included a complete job description for a SFSS; noted that plaintiff's caseload limitations could be considered, although long drive times might remain; noted plaintiff's hour commute each way; noted that standard business hours were not always applicable; and emphasized the requirement of emergency duty service. Both doctors responded to Ms. Brown that they did not see plaintiff as being capable of performing these specific job responsibilities due to her illness. (D.I. 34 at 40-41) Dr. Newman added, however, that "[i]t is possible that given modification of your description of her responsibilities she might be able to continue in the job." (D.I. 34 at 41) Despite Dr. Newman's statement, as well as the unanswered question set forth in Dr. Thomas's letter of January 19, 1993, Ms. Brown made no further attempt to discuss with either doctor (or plaintiff) possible accommodations that would satisfy the doctors' concerns. (D.I. 42 at 117)

*4 In January of 1993, plaintiff went to see Gregory Chambers, the affirmative action officer for the State Personnel Office. (D.I. 42 at 42, 158- 160) Mr. Chambers told her to see Peggy Swygert, one of the affirmative action officers for the Department. He also told her about a new federal law designed to aid people with disabilities: the ADA. Finally, Mr. Chambers gave plaintiff an article that referred to the ADA; it was the first time she had heard about the statute. (D.I. 42 at 42, 48, 159)

Shortly thereafter, plaintiff contacted Ms. Swygert. (D.I. 42 at 160) On February 23, 1993, the two had a telephone conversation in which Ms. Swygert took extensive notes, which she forwarded on that date to Norwood Coleman, the Department's affirmative action officer. (D.I. 34 at 44; D.I. 42 at 128-131) Ms. Swygert explained to plaintiff during that call that Mr. Coleman was the Department's ADA representative and he would call her back. (D.I. 42 at 42) In her memorandum to Mr. Coleman of February 23, 1993, Ms. Swygert referred to plaintiff's call as an "ADA Inquiry." (D.I. 34 at 44)

Upon receiving Ms. Swygert's memorandum, Mr. Coleman did some investigation and confirmed that plaintiff was an employee of the Department. (D.I. 42 at 132-33) He then spoke with plaintiff by telephone, at which time she informed him, consistent with Ms. Swygert's memorandum, that she was seeking his assistance in having the Department make accommodations for her under the ADA. (D.I. 42 at 42-3) Mr. Coleman responded that he would look into it, and in addition asked for copies of some of

Not Reported in F.Supp.                                                          Page 4
1996 WL 790101 (D.Del.), 22 A.D.D. 1101
**(Cite as: 1996 WL 790101 (D.Del.))**

the paperwork that she had previously submitted in support of her disability pension request. On March 1, 1993, plaintiff delivered to Mr. Coleman copies of the documents he requested, including a certification from one of her doctors relating to the disability pension process. (D.I. 34 at 102) On March 23, 1993, after having heard nothing further from Mr. Coleman -- or anyone else in the Department -- regarding her request for accommodations under the ADA, plaintiff filed a charge of discrimination with the Delaware Department of Labor alleging violations of the ADA. (D.I. 42 at 42-3, 49) Two days later, she sent a memorandum to Mr. Coleman summarizing her attempts to seek his assistance and his failure to respond. Mr. Coleman never responded to the March 25th memorandum; nor did he process the ADA complaint. (D.I. 42 at 121-22, 134-140)

By letter dated April 8, 1993, plaintiff was forwarded copies of the completed disability pension application for her signature. (D.I. 34 at 47, 103-104, 161) Plaintiff's disability pension was granted by the Delaware State Pension Office in August 1993, effective May 1, 1993. (D.I. 34 at 48)

III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a summary judgment shall be entered in favor of a moving party where it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Where the nonmoving party opposing summary judgment has the burden of proof at trial on the issue for which summary judgment is sought, that party must then make a showing sufficient to establish the existence of an element essential to her case. If the nonmoving party fails to make a sufficient showing in this regard, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary judgment "mirrors the standard for a directed verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Therefore, the mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. Id. at 249. In making its determination, the court should view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. Armbruster v. Unisys Corp. 32 F.3d 768, 777 (3d Cir. 1994). The substantive law identifies which facts are material for purposes of summary judgment. Anderson, 477 U.S. at 248.

*5 Plaintiff has brought her action under the ADA. To qualify for protection against discrimination under the ADA, plaintiff must prove that she is a "qualified person with a disability who, with or without reasonable accommodation, can perform the essential functions of the job." 42 U.S.C. § § 12111(8), 12112(a). "Accordingly, a person unable to work is not intended to be, and is not, covered by the ADA." McNemar v. Disney Store, Inc., 91 F.3d 610, 618 (3d Cir. 1996).

IV. DISCUSSION

Defendant asserts that plaintiff's ADA claim is barred by operation of the doctrine of judicial estoppel due to plaintiff's assertion in pursuing her disability claim that she is unable to work. Alternatively, defendant argues that the record presents no genuine issues of material fact as to whether plaintiff is unable to perform the essential functions of the position with or without reasonable accommodation.

A. Judicial Estoppel

As recently explained by the United States Court of Appeals for the Third Circuit, the doctrine of estoppel is

an equitable doctrine, invoked by a court in its discretion (1) to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and (2) with a recognition that each case must be decided upon its own particular facts and circumstances.

McNemar, 91 F.3d at 617. In order to determine whether judicial estoppel is applicable to a particular case, the court must undertake a two-part threshold inquiry as articulated in Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996):

(1) Is the party's present position inconsistent with a position formerly asserted? (2) If so, did the party assert either or both of the inconsistent positions in bad faith - i.e., "with intent to play fast and loose" with the court?

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*McNemar,* 91 F.3d at 618.

[1] Even assuming for purposes of this proceeding that plaintiff's present position on her ADA claim is inconsistent with the position formerly asserted on her disability claim, nevertheless the doctrine of judicial estoppel is inapplicable to the facts and circumstances of this case. The Third Circuit in *Ryan Operations* explicitly required that a claimant "deliberately assert [[[] inconsistent positions in order to gain advantage," i.e., that a claimant act in bad faith. 81 F.3d at 363. Although there is no specific discussion of the bad faith requirement in *McNemar,* the Third Circuit reiterated the two-part threshold inquiry from *Ryan* and found that the district court had properly invoked its discretion in applying judicial estoppel to the facts at bar. Significantly, the claimant in *McNemar* certified under penalty of perjury that he had been totally and permanently disabled and unable to work at least five weeks before he was discharged from employment. 91 F.3d at 615.

Having confirmed that bad faith is a threshold requirement for application of judicial estoppel, the court finds no evidence of such in the record presented instantly. Therefore, the court declines to bar plaintiff's ADA claim by reason of judicial estoppel.

B. Qualified Person

*6 [2] The court further declines to enter a summary judgment in favor of defendant on the ground that plaintiff was unable to perform the essential functions of her position. As explained at oral argument, the essential functions of plaintiff's position were to investigate reports of child abuse, neglect, or dependency. The court finds that there are genuine issues of material fact with respect to whether plaintiff was a qualified person who could perform such functions, with or without reasonable accommodations.

V. CONCLUSION

For the reasons stated, defendant's motion for summary judgment will be denied.

An order shall follow.

1996 WL 790101 (D.Del.), 22 A.D.D. 1101

**Motions, Pleadings and Filings (Back to top)**

-     1:95CV00406    (Docket) (Jun. 21, 1995)

END OF DOCUMENT