IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELBERTA BERNICE LIEBERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 96-523-GMS |
| | ) | |
| THE STATE OF DELAWARE, | ) | |
| THE FAMILY COURT OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ELBERTA BERNICE LIEBERMAN AND DEFENDANTS THE STATE OF DELAWARE AND THE FAMILY COURT OF THE STATE OF DELAWARE'S JOINT PROPOSED JURY INSTRUCTIONS**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
Edward M. McNally (#614)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800
emcnally@morrisjames.com
Attorney for Plaintiff Bernice Lieberman

STATE OF DELAWARE
DEPARTMENT OF JUSTICE
Marc P. Niedzielski (#2616)
Ilona M. Kirshon (#3705)
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8324
Marc.Niedzielski@state.de.us
Attorneys for Defendants

**Table of Contents**

PRELIMINARY JURY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

J-1.1  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

J-1.2  EVIDENCE DEFINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

J-1.3  DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . 3

J-1.4  CONSIDERATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

J-1.5  STATEMENTS OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

J-1.6  CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

J-1.7  EXPERT TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

J-1.8  NUMBER OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

J-1.9  BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE . . . . . . . . . . 6

J-1.10  DELIBERATION AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REHABILITATION ACT INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

P-2.1  NATURE OF REASONABLE ACCOMMODATION CLAIM . . . . . . . . . . . . . 9

Defendant's Objection to P-2.1, P-2.2, P-2.7, P-2.8 . . . . . . . . . . . . . . . . . . . . . . . . . 10

D-2.1  NATURE OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Plaintiff's Objection to D-2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

P-2.2  ELEMENTS OF REASONABLE ACCOMMODATION CLAIM . . . . . . . . . . 13

Defendant's Objection to P-2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

D-2.2  ELEMENTS OF A SECTION 504 CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Plaintiff's Objection to D-2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D-2.3  FIRST ELEMENT – Plaintiffs has a disability . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiff's Objection to D-2.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

D-2.4  SECOND ELEMENT – that plaintiff is otherwise qualified . . . . . . . . . . . . . . 22

Plaintiff's Objection to D-2.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

D-2.5  THIRD ELEMENT – defendant discriminated against plaintiff
      solely due to her disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Plaintiff's Objection to D-2.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

D-2.6  FOURTH ELEMENT – an adverse employment action . . . . . . . . . . . . . . . . . . 29

Plaintiff's Objection to D-2.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

P-2.7  NATURE OF FAILURE TO INTERACT CLAIM . . . . . . . . . . . . . . . . . . . . . . . 32

Defendant's Objection to P-2.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

P-2.8  ELEMENTS OF FAILURE TO INTERACT CLAIM . . . . . . . . . . . . . . . . . . . . 34

Defendant's Objection to P-2.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

P-2.9  BURDEN OF PROOF SHIFTS TO DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . 36

Defendant's Objection to P-2.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

P-2.10  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      A.  Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      B.  Substantially Limited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      C.  Qualified Individuals with a Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

      D.  Essential Job Functions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

      E.  Major Activities of Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

      F.  Reasonable Accommodations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

      G.  Undue Hardship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

      H.  Adverse Employment Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Defendant's Objection to P-2.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

P-3.1  COMPENSATORY DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Defendant's Objection to P-3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

D-3.1  COMPENSATORY DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Plaintiff's Objection to D-3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

P-3.2  BACK PAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Defendant's Objection to P-3.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

P-3.3  FRONT PAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Defendant's Objection to P-3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

D-3.4  DUTY TO MITIGATE (to be given if the Court instructs as to back pay or
        front pay) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Plaintiff's Objection to D-3.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CASE SPECIFIC EVIDENCE INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

P-4.1 ADVERSE INFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Defendant's Objection to P-4.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

D-4.2 LIMITATION IN THE USE OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Plaintiff's Objection to D-4.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

J-5.1  JURY'S DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

J-5.2  CURATIVE INSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Pursuant to Rule 51(a) of the Federal Rules of Civil Procedure, and Rule 51.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, Plaintiff Elberta Bernice Lieberman and Defendants The State of Delaware and The Family Court of the State of Delaware (collectively "the Family Court") request that the Court give the following instructions to the jury in this matter:

**PRELIMINARY JURY INSTRUCTIONS**[1]

**J-1.1**[2]  **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

---

[1]     The Preliminary Jury Instructions (Instructions 1.1-1.10) are taken from *Sample Preliminary Jury Instructions—Civil* that are available at http://www.ded.uscourts.gov/GMSmain.htm.

[2]     Pursuant to Local Rule 51.1(b), all instructions are labeled so as to indicate whether that instruction is submitted jointly or by the plaintiff or the defendants.  Joint instructions are numbered with a "J" followed by the number.  Plaintiff's proposed instructions are numbered with a "P" followed by the number.  Defendants' proposed instructions are listed with a "D" followed by the number.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

**J-1.2   EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**J-1.3   DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying

3

a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it weigh that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## J-1.4    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## J-1.5    STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## J-1.6    CREDIBILITY OF WITNESSES

You are the sole judges of each witness' credibility. You should consider each witness'

means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

### J-1.7. EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**J-1.8   NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

**J-1.9   BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE**

This is a civil case.  Plaintiff has the burden of providing his claims and damages by what is called a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it

out of your mind in considering whether or not plaintiff has met his burden of proof on various issues.

**J-1.10 DELIBERATION AND VERDICT**

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the

7

testimony and evidence.  Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer.  The question will be given to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone else how you stand on your votes.  For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

**REHABILITATION ACT INSTRUCTIONS**

**P-2.1   NATURE OF REASONABLE ACCOMMODATION CLAIM**[3]

Under the Rehabilitation Act, it is unlawful for an employer to cause an employee to suffer an adverse employment decision or otherwise discriminate against an employee because of that employee's disability, if the employee is qualified to do the job with a reasonable accommodation by the employer of the employee's disability.

Plaintiff Bernice Lieberman claims that the Family Court discriminated against plaintiff Bernice Lieberman by causing her to suffer an adverse employment decision because plaintiff Bernice Lieberman was an "individual with a disability" within the Rehabilitation Act. Plaintiff Bernice Lieberman claims that she was qualified to do the job with a reasonable accommodation by the Family Court of her disability.[4]

The Family Court denies that it discriminated against plaintiff Bernice Lieberman in any way and asserts that [*describe defendant's theory of defense*].[5]

---

[3]     Research failed to reveal a pattern instruction dealing specifically with Rehabilitation Act claims. However, the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." 29 U.S.C.A. § 794; *see also Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) (finding that an ADA case "is relevant to our analysis of the Rehabilitation Act because in 1992 the Rehabilitation Act was amended to incorporate the standards of several sections of the ADA, including the section defining 'reasonable accommodation'"). Accordingly, the Plaintiff's Rehabilitation Act Instructions are generally based on pattern jury instructions for an ADA failure to provide reasonable accommodation claim. *See* 3C Kevin F. O'Malley et. al., *Federal Jury Practice and Instruction*s Ch. 172 (5th ed. 2005). Modifications have been made to account for language in the Rehabilitation Act and Third Circuit case law.

[4]     *See* 3C O'Malley et al., *Federal Jury Practice and Instructions* § 172.02; 29 U.S.C.A. § 794.

[5]     The Family Court has refused to include a theory of its defense for this instruction.

**Defendant's Objection to P-2.1, P-2.2, P-2.7, P-2.8**

Plaintiff's proposed instructions attempt to instruct the jury as to her case and claims and are not evenly balanced and impartial instructions. Additionally plaintiff duplicates their instructions by attempting to make two Section 504 claims from one by proposing an independent "failure to interact" claim which is in actuality a duty that covers both employee and employer and is not a separate claim.[6]

---

[6]    *Rehling v. City of Chicago,* 207 F.3d 1009, 1015 (7th Cir. 2000); *Fjellestad v. Pizza Hut of America, Inc.* , 188 F.3d 944 (8th Cir. 1999); *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 312 (3rd Cir. 1999) *citing  Mengine v. Runyon,* 114 F.3d 415, 419-20 (3rd Cir. 1997).

### D-2.1  NATURE OF CLAIM

The plaintiff in this case is Elberta Bernice Lieberman.  Ms. Lieberman claims that her former employer, the Family Court of the State of Delaware, discriminated against her based solely on her disability.  Specifically, plaintiff claims that the Family Court violated Section 504 of the Rehabilitation Act which provides:

"No otherwise qualified individual with a disability in the United States, … shall, solely by reason of her or his disability, … be subjected to discrimination under any program or activity receiving Federal financial assistance…"

Hereafter we shall refer to Section 504 of the Rehabilitation Act as simply the "Act."

To establish a claim under the Act, Plaintiff must establish, by a preponderance of the evidence, each of the following elements:

First, that Ms. Lieberman had a disability;

Second, that even with the disability Ms. Lieberman was still qualified to perform her employment duties;

Third, that the defendant discriminated against her based solely on that disability; and

Fourth, that plaintiff suffered an adverse employment action.

I shall now examine each of the elements in greater detail.[7]

---

[7]    Defendant's proposed instructions D-2.1 through D-2.6 are almost verbatim from 2C Fed. Jury Prac. and Instr. § 172.30 (5th Ed.) With necessary revisions for Section 504.  The instruction is based on the Code of Federal Regulations, 29 C.F.R. Part 1600.  This Circuit has applied those ADA regulations and interpretive guidelines in Section 504 cases.  *Mengine v. Runyon,* 114 F.3d 415 (3rd Cir. 1997).  However, the Supreme Court found that "no agency, however, has been given authority to issue regulations implementing the generally applicable provisions of the ADA, *see* §§ 12101-12102, which fall outside of Titles I-V.  Most notably, no agency has been delegated authority to interpret the term 'disability.'" *Sutton v. United Airlines,* 527 U.S. 471, 479 (1999).

**Plaintiff's Objection to D-2.1**

Although the Family Court's quotation of 29 U.S.C.A. § 794 is accurate, the exact language of the statute is not necessary to generally introduce the claim.  Likewise, it is not necessary when generally introducing the claim to go into each and every element.  The Plaintiff's instruction is needlessly duplicative of the elements instructions proposed by both Plaintiff and Defendant.  *See* P-2.2 & D-2.2.  On the other hand, P-2.1, Plaintiff's Nature of Reasonable Accommodation Claim Instruction, generally introduces the concept of employment discrimination under the Rehabilitation Act and the parties' theories without needlessly confusing the jury with quotations from statutes or by repeating the elements of the claim, which will be the subject of the very next instruction.

**P-2.2  ELEMENTS OF REASONABLE ACCOMMODATION CLAIM**

In order to prevail on this claim plaintiff Bernice Lieberman must prove each of the following facts by a preponderance of the evidence:

1) That plaintiff Bernice Lieberman was an "individual with a disability," as hereafter defined;

2) That plaintiff Bernice Lieberman was an "otherwise qualified individual with a disability," as hereafter defined, able to perform the essential functions of the job, with or without reasonable accommodations by the Family Court;

3) That plaintiff Bernice Lieberman suffered an adverse employment decision by the Family Court; and

4) The adverse employment decision was a result of either discrimination or a failure to reasonably accommodate for Bernice Lieberman's disability.[8]

Plaintiff Bernice Lieberman contends that the Family Court should have reasonably accommodated plaintiff Bernice Lieberman by modifying the plaintiff's work schedule. First, you must decide if Bernice Lieberman suffers from a disability.  Second, you must decide whether plaintiff Bernice Lieberman would have been able to perform the essential functions of the job with a modified work schedule.  Essential job duties are those duties that the person holding the job would have to perform in order to be considered qualified for the position. Third, you must determine whether Bernice Lieberman suffered an adverse employment decision by the Family

---

[8]      *See* 3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.21; 29 U.S.C.A. § 794; *Mengine*, 114 F.3d at 418 (setting forth elements of a Rehabilitation Act claim); *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) (same); *see also Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (adopting "adverse employment decision" language in elements of ADA claim).

13

Court.  Finally, you must determine if the adverse employment decision was a result of a failure to reasonably accommodate the plaintiff.[9]

---

[9]      *See* 3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.21; 29 U.S.C.A. § 794; *Mengine*, 114 F.3d at 418; *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d at 306.

**Defendant's Objection to P-2.2**

    Please refer to defendant's objection following P-2.1.

**D-2.2  ELEMENTS OF A SECTION 504 CLAIM**

To establish a claim under Section 504, Plaintiff must establish, by a preponderance of the evidence, each of the following elements:

First, that Ms. Lieberman had a disability;

Second, that even with the disability Ms. Lieberman was still qualified to perform her employment duties;

Third, that the defendant discriminated against her based solely on that disability; and

Fourth, that plaintiff suffered an adverse employment action.

I shall now examine each of the elements in greater detail.

16

**Plaintiff's Objection to D-2.2**

P-2.2, Plaintiff's Reasonable Accommodation Element instruction, is simply more consistent with the both the language of the Rehabilitation Act and Third Circuit case law than D-2.2. Plaintiff does not object to the first and fourth elements to D-2.2. These are essentially the same as elements (1) and (3) of P-2.2. However, Plaintiff does object to the language in the second and third elements of D-2.2.

According to the Third Circuit:

> In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.[10]

Comparing the case law to Defendant's instructions, the first and fourth elements of Defendant's instructions are essentially correct and are consistent with Plaintiff's instructions. However, Defendant's proposed second element *inexcusably* eliminates the "with or without reasonable accommodations by the employer" language. Additionally, in the third element, Defendant includes the language "defendant discriminated against her based solely on that disability." That language only appears in older Third Circuit case law. Although Defendants cite to no authority for that language, presumably it came from older case law. More recent case law eliminates the "solely" language.

Additionally, the "discriminated against her based solely on that disability" language, although admittedly found in Section 794, is presented by the Family Court completely out of context. It will leave the jury with the impression that there had to have been some sort of invidious or willful discrimination on part of the Family Court for Bernice Lieberman to

---

[10]    *Shiring,* 90 F.3d at 831; *accord Mengine,* 114 F.3d at 418.

succeed.  This is simply not the case.[11]  As both *Mengine* and *Shiring* teach, a plaintiff may succeed if a plaintiff: 1) had a disability; 2) could have performed her job with or without reasonable accommodation; and 3) suffered an adverse employment decision.  What is clearly implied by both of these decisions, and what is completely ignored by the Defendant's instruction, is that the failure to provide a reasonable accommodation is, in and of itself, the discriminatory act.

P-2.2 accurately reflects the current state of the law.  Accordingly, P-2.2 should be adopted by the Court rather than D-2.2.

---

[11]     *See, e.g., Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 263-264 (1st Cir. 1999) (finding that in a reasonable accommodation claim a plaintiff does not have to prove any discriminatory animus); 42 U.S.C.A. § 12112(b) (providing that the definition of discrimination includes a failure to provide a reasonable accommodation).

**D-2.3  FIRST ELEMENT – Plaintiff has a disability**

The first element of the Section 504 claim that plaintiff must prove by the preponderance of the evidence is that she has a "disability."  An individual with a "disability" is a person who has a physical or mental impairment that substantially limits one or more major life activities.

A "major life activity" is an activity that an average person can perform with little or no difficulty.  Examples are caring for oneself, performing manual tasks, walking, talking, seeing, hearing, breathing, learning, and working.

An impairment substantially limits one or more major life activities if an individual is unable to perform an activity, or is significantly limited in the ability to perform an activity, compared to an average person in the general population.

Three factors you should consider in determining whether the Plaintiff's alleged impairment substantially limits a major life activity are (1) its nature and severity; (2) how long it will last or is expected to last; and (3) its permanent or long term impact, or expected impact. Temporary injuries and impairments of limited duration are not considered to be disabilities under Section 504.

Plaintiff has alleged that her impairment substantially limited her ability to work. Working is a major life activity; however, an inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.  Indeed, an individual is substantially limited in the major life activity of working only if she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

In deciding whether the plaintiff's impairment substantially limited her ability to work, you should consider the three factors already mentioned relating to the severity, duration and lasting effect of the impairment.  In addition, you  may also consider:  (1) the geographical area to which the individual has reasonable access;  (2) the number and types of jobs, if any, utilizing

19

similar training, knowledge, skill or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and (3) the number and types of jobs, if any, not utilizing similar training, knowledge, skills of abilities, within that geographical area from which the individual is also disqualified because of the impairment.

You also should consider any devices or medication used by Plaintiff for her impairment. Under the ADA, a person is not disabled if she uses a device or medication that prevents her from being substantially limited in a major life activity. For example, a person with high blood pressure is not disabled if, when she is medicated, her high blood pressure does not substantially limit her in a major life activity. However, a person who uses a device or takes medication is disabled if she is still substantially limited in a major life activity despite using a device or taking medication, or if the device or medication itself substantially limits her in that activity.

**Plaintiff's Objection to D-2.3**

Plaintiff has no objection to the content of the definitions of "disability," "major life activity," or "substantially limits" that is contained in D-2.3. In fact, the substance of these definitions appears in P-2.10. However, in addition to a classic reasonable accommodation theory of liability, Plaintiff contends that the facts support a failure to interact theory of liability. Many of the definitions that are relevant to the reasonable accommodation theory also apply to the failure to interact theory. Therefore, it will be more helpful for the jury to have the definitions of the terms and phrases, which apply to both theories, collected in one instruction rather than appearing solely in the reasonable accommodation instructions. Accordingly, Plaintiff requests that the Court adopt P-2.10, which contains the relevant definitions of terms and phrases.

**D-2.4  SECOND ELEMENT – that plaintiff is otherwise qualified**

The second element that the Plaintiff must prove by a preponderance of the evidence is that she was qualified for the job in question at the time of the challenged employment decision notwithstanding her disability.  The ADA does not require an employer to hire or retain or promote an individual who cannot perform the job.

In order to prove that she was qualified, the Plaintiff must establish:  (1) that the Plaintiff possessed the requisite skill, experience, education and other job-related requirements of the job in question; and (2) that the Plaintiff was capable of performing all of the essential functions of the job in question, despite any disability, with or without reasonable accommodation by Plaintiff's employer.

To the extent that the Plaintiff contends that a particular function is not essential to the job, the Plaintiff also bears the burden of proving that this function is not, in fact essential.

(a)        Definition of "Essential Functions"

The essential functions of a position are the fundamental job duties of that position.  The term "essential functions" does not include the marginal functions of the position.  A job duty or function may be considered essential because, among other things, one of the reasons the job exists is to perform that function; or because there are a limited number of employees available among whom the performance of that job function can be distributed; or because the function is highly specialized and the incumbent in the position was hired for his or her expertise or ability to perform that particular function.  Evidence of whether a particular function is essential includes, but is not limited to, the employer's own judgment as to which functions are essential; the existence of written job descriptions prepared before advertising or interviewing applicants for the job; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the terms of a collective bargaining agreement, if applicable; the work experience of past incumbents in the

22

job; and/or the current work experience of incumbents in similar jobs. Further, in addition to the particular requirements of a specific job, an employer may have general requirements for an employee in any position. For example, the employer may require a reliable level of attendance by the employee.

(b)     Definition of "Reasonable Accommodation"

Even if the Plaintiff was not able to perform all of the essential functions of the job due to limitations arising from a disability, the Plaintiff may still prove that she was "qualified" for the job if the Plaintiff has proved (1) that the Plaintiff could have performed all of the essential functions of the position with a "reasonable accommodation;" and (2) that the Plaintiff identified and requested this accommodation from the employer.

A "reasonable accommodation" is a change that can reasonably be made without undue hardship to the employer in the employer's ordinary work rules, facilities, or terms and conditions of employment.

In order to prove that she would have been qualified for the job if the Plaintiff had received a reasonable accommodation, the Plaintiff must prove each of the following facts:

First:          That the Plaintiff informed the Defendant of the substantial limitations arising out of the Plaintiff's disability;

Second:          That the Plaintiff identified and requested an accommodation;

Third:          That the requested accommodation was reasonable, was available and would have allowed the Plaintiff to perform the essential functions of the job; and

Fourth:               That the Defendant unreasonably refused to provide that accommodation.

So, the first fact that the Plaintiff must provide is that she informed the Defendant of the substantial limitations that arose out of her disability. An employer is not required to assume that an employee with an impairment suffers from a particular limitation, but may assume instead that the individual can perform her job unless otherwise notified by the employee.

23

Moreover, both the employer and the employee must act in good faith to find a reasonable accommodation, if that is possible.   If the employer does not act in good faith to find and reasonable accommodation and such an accommodation is possible, then the employer, in this case, the defendant has unreasonably refused an accommodation.  If on the other hand, if you find the that employee, in  this case, the plaintiff, failed to cooperate and act in good faith then you may find that plaintiff has failed to establish this element.[12]

---

[12]     *Mengine v. Runyon,* 114 F.3d 415 (3rd Cir. 1997).

**Plaintiff's Objection to D-2.4**

Again, because many of the definitions that are relevant to the reasonable accommodation theory also apply to the failure to interact theory, it will be more helpful for the jury to have the definitions of the terms and phrases, which apply to both theories, collected in one instruction rather than appearing solely in the reasonable accommodation instructions. Accordingly, Plaintiff requests that the Court adopt P-2.10, which contains the relevant definitions of terms and phrases.

Additionally, based on the facts of the instant case, D-2.4 is an incomplete instruction. It is possible for an employee to be a qualified individual when she first encounters a disability, and then later become too disabled to perform essential job functions. Even if Bernice Lieberman is unable to perform her essential job functions today, for purposes of a Rehabilitation Act claim, a person is still a qualified individual with a disability if the Family Court's refusal to reasonably accommodate her resulted in her inability to perform "essential [job] functions."[13] "A reasonable jury could conclude that the change in her status from a qualified individual with a disability who was able to work with an accommodation to an individual who was totally disabled (if such a change occurred) was precipitated by Defendants' failure to accommodate her disability."[14]

Finally, Defendant's definition of "reasonable accommodation" is simply too one sided. In part, the D-2.4 provides that "the Plaintiff identified and requested an accommodation." A jury member would read that instruction to mean that Plaintiff is responsible for finding a reasonable accommodation on her own. However, the case law within the Third Circuit mandates that employer interact with an employee to find a reasonable accommodation.[15]

---

[13]    *Norman v. Univ. of Pittsburgh*, 2002 WL 32194730, at *9 (W.D. Pa. Sept. 17, 2004).

[14]    *Id.*

[15]    *Mengine*, 114 F.3d at 420.

25

Because the definitions apply to multiple claims, and because of the incompleteness of Defendant's instruction, Plaintiff requests that the Court adopt P-2.10.

**D-2.5  THIRD ELEMENT – defendant discriminated against plaintiff solely due to her disability**

The third element which plaintiff must prove is that the defendant discriminated against her solely based on her disability. Plaintiff contends that defendant [                    ]. Plaintiff must prove by the preponderance of the evidence that defendant's alleged discrimination against her was solely due to her disability and nothing else.  If the plaintiff does not prove this element or if the evidence establishes that that there were other reasons not due to her disability, then you must find for the defendant.

27

**Plaintiff's Objection to D-2.5**

According to the Third Circuit:

> In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.[16]

Again, as discussed in Plaintiff's Objection to D-2.2, the recent Third Circuit case law does not use the "discriminated against her based solely on that disability" language. As discussed in Plaintiff's objection to D-2.2, this language, without more context, suggests a discriminatory animus, which a plaintiff simply does not have to show.[17]

Additionally, Defendant's statement that if "evidence establishes that that [sic] there were other reasons not due to her disability, then you must find for the defendant" is overly broad. For example, it would be possible for the Defendant to argue that cost played a role in the dismissal. However, the costs of an accommodation are only a legitimate rationale if the accommodation amounts to an undue hardship.[18] Therefore, not *any* reason is sufficient.

---

[16]    *Shiring,* 90 F.3d at 831/ *accord Mengine v. Runyon,* 114 F.3d at 418.

[17]    *See Higgins*, 194 F.3d at 263-264 (finding that in a reasonable accommodation claim a plaintiff does not have to prove any discriminatory animus); 42 U.S.C.A. § 12112 (providing that the definition of discrimination includes a failure to provide a reasonable accommodation).

[18]    *See Shiring*, 90 F.3d at 831-832 ; *see also* 42 U.S.C.A. § 12111(10); C.F.R. § 1630.2(p)

28

**D-2.6  FOURTH ELEMENT – an adverse employment action**

The Fourth and final element plaintiff must prove under the Act, is that due solely to her disability, she suffered an adverse employment action.

In this regards, it is undisputed that on October 28, 1994, plaintiff was given by her supervisor a recommendation that she be dismissed for employment due to a number of reasons. That recommendation was never implemented nor was plaintiff dismissed from employment. Instead, plaintiff applied for both a State disability pension and a Social Security disability pension.

Where an employee receives a Social Security disability benefits she must explain that on one hand she is too disabled to work with any statement that she is able to perform the essential functions of her job.

Plaintiff must prove that she suffered an adverse employment action.[19]

---

[19]     *Degroat v. Power Logistics*, 118 Fed.Appx. 575 (3rd Cir. 2004).

**Plaintiff's Objection to D-2.6**

Defendant is correct that Bernice Lieberman must prove that she suffered an adverse employment decision. However, the remainder of this instruction is nothing more than a thinly-veiled attempt to improperly include an argument in the jury instructions. Defendant is resurrecting an argument that it has offered before. The second paragraph improperly implies that Lieberman did not suffer an adverse employment decision because she opted for a disability pension rather than being dismissed from her job. Such an argument, and such an instruction, is completely inconsistent with the case law of the U.S. Supreme Court, the Third Circuit, and this Court.

First, an "adverse employment decision" does not merely mean termination. The Third Circuit has found that "[a]dverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."[20] In other words, the failure to make reasonable accommodations, if proven, can, in and of itself, amount to an adverse employment decision. Additionally, in the analogous area of Title VII discrimination, the Third Circuit has found that a recommendation not to retain an employee would qualify as an adverse employment decision.[21] Therefore, if Bernice Lieberman's supervisor recommended dismissal, that was an adverse employment decision.

Moreover, at least since the *Cleveland v. Policy Management Systems Corporation* decision, a person may both obtain disability benefits and pursue an ADA or Rehabilitation Act

---

[20]    *Williams v. Philadelphia Housing Authority Police Department,* 380 F.3d 751, 761 (3d Cir. 2004).

[21]    *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) ("In addition, Seminoff's recommendation not to retain Abramson would also qualify as an adverse employment action sufficient to meet this element."); *see also Ryales v. Phoenixville School Dist.*, 177 F. Supp. 2d 391, 396 (E.D. Pa. 2001) (finding that a superintendent's recommendation to the school board that a teacher be terminated amounted to an adverse employment action).

claim.[22]  As *Cleveland* explained that "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it."[23]  Both the Third Circuit[24] and this Court[25] have found that disability and ADA/Rehabilitation Act claims may co-exist.  In any event, it is inappropriate for the Family Court to include the facts regarding pensions in a jury instruction dealing with adverse employment decisions.  At the very least, there is a factual question for the jury, and the Family Court does not get to argue in the jury instructions.

Because of the inappropriate argument contained in this instruction and the incomplete nature of the instruction, Plaintiff requests that the Court adopt P-2.10.  Alternatively, if the Court incorporates the factual statements in D-2.6 into the jury instructions, Plaintiff requests that the jury be instructed that a recommendation to terminate an employee is an adverse employment action.[26]

---

[22]     *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999).

[23]     526 U.S. at 803.

[24]     *See, e.g.*, *Motley v. New Jersey State Police*, 196 F.3d 160 (3d Cir. 1999); *Detz v. Greiner Industries, Inc.*, 346 F.3d 109 (3d Cir. 2003).

[25]     *Harrison v. State of Delaware*, 1996 WL 790101, at *5 (D. Del. Dec. 30, 1996).

[26]     *See Williams,* 380 F.3d at 761 (3d Cir. 2004); *Ryales,* 177 F. Supp. 2d at 396 (E.D. Pa. 2001)

31

**P-2.7   NATURE OF FAILURE TO INTERACT CLAIM**

In addition to her claims for failure to accommodate her, Bernice Lieberman has a second claim under the Rehabilitation Act.  Under the Rehabilitation Act, once an employer is notified of an employee's disability and requested a reasonable accommodation, the employer has a duty to make reasonable efforts to assist and employee and to interact or communicate with the employee in good faith.  Plaintiff Bernice Lieberman claims that the Family Court discriminated against her by failing to interact and communicate with her in good faith after she notified the Family Court of her disability and requested a reasonable accommodation.[27]

The Family Court denies that it discriminated against plaintiff Bernice Lieberman in any way and asserts that [*describe defendant's theory of defense*].[28]

---

[27]     *Mengine*, 114 F.3d at 420; *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 319-20 (3d Cir.1999) (setting forth elements of failure to interact claim).

[28]     The Family Court has refused to include a theory of its defense for this instruction.

32

**Defendant's Objection to P-2.7**

This instruction duplicates the following instruction and does not state the law in that it makes failure to interact an independent claim which it is not.[29]   Moreover, the case law for this Circuit indicates that the "interactive process" is an aspect of reasonable accommodation and the employee and the employer share the responsibility.[30]

---

[29]    *Rehling v. City of Chicago,* 207 F.3d 1009, 1015 (7th Cir. 2000); *Fjellestad v. Pizza Hut of America, Inc*., 188 F.3d 944 (8th Cir. 1999).

[30]    *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 312 (3rd Cir. 1999) *citing  Mengine v. Runyon*, 114 F.3d 415, 419-20 (3rd Cir. 1997).

33

**P-2.8    ELEMENTS OF FAILURE TO INTERACT CLAIM**

In order to prevail on this claim that the Family Court failed to participate in the interactive process, plaintiff Bernice Lieberman must prove each of the following facts by a preponderance of the evidence:

1) the Family Court knew about the Bernice Lieberman's disability;

2) Bernice Lieberman requested accommodations or assistance for her disability;

3) the Family Court did not make a good faith effort to assist Bernice Lieberman in seeking accommodations; and

4) Bernice Lieberman could have been reasonably accommodated but for the Family Court's lack of good faith.[31]

---

[31]    Despite Defendant's arguments to the contrary, the Third Circuit has endorsed a theory of liability based on an employer's failure to interact. *Taylor,* 184 F.3d at 319-20 (setting forth elements of failure to interact claim); *Mengine*, 114 F.3d at 420 (finding that duty to interact exists under Rehabilitation Act).

34

**Defendant's Objection to P-2.8**

Please refer to defendant's objection under P-2.7.

**P-2.9   BURDEN OF PROOF SHIFTS TO DEFENSE**

If Bernice Lieberman is able to meet her burden on either the Reasonable Accommodation Claim or the Failure to Interact Claim, the Family Court then bears the burden of producing evidence that shows that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.[32]  If the Family Court is able to meet this burden, the burden shifts back to Bernice Lieberman to show that the Family Court's rationale for the adverse employment decision is merely a pretext for discrimination.[33]

---

[32]     *Shiring*, 90 F.3d at 831 (3d Cir. 1996) ("The plaintiff must make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, *as an affirmative defense*, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.")(emphasis added); *Geuss v. Pfizer, Inc.*, 971 F. Supp. 164, 173 (E.D. Pa. 1996) (finding that burden shifting is a proper jury instruction for reasonable accommodation claim).

[33]     *Ritchie v. Henderson*, 161 F. Supp. 2d 437, 444 (E.D. Pa. 2001) (citing *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999)).

**Defendant's Objection to P-2.9**

This instruction fails to state that the ultimate burden of proof remains at all times on the plaintiff to prove intentional discrimination by the defendant against the plaintiff.[34]

---

[34]    *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000) (citations omitted).

**P-2.10 DEFINITIONS**

The definitions of certain terms and phrases relevant the claims and defenses in this case are as follows:

    A.    <u>Disability</u>

The term **"disability"** means:

1) A physical or mental impairment that "substantially limits" one of the major activities of life, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working; or

2) A record of such an impairment; or

3) Being regarded as having such an impairment.[35]

"Individual with a disability" means any person who:

1) has a physical or mental impairment which "substantially limits" one or more of such person's major life activities;

2) has a record of such an impairment; or

3) is regarded as having such an impairment.[36]

    B.    <u>Substantially Limited</u>

Working is a major life activity. However, an inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. An individual is **substantially limited** in the major life activity of working only if the individual is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

---

[35]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.30 (citing 29 C.F.R. § 1630.2(g) & 42 U.S.C.A. § 12102(2)).

[36]    29 U.S.C.A. § 705; *see also* 29 U.S.C.A. § 794 (adopting the definition for "individual with a disability" that is articulated in 29 U.S.C.A. § 705).

In deciding whether an individual's impairment substantially limited the individual's ability to work, you should consider the following factors relating to the severity, duration and lasting effect of the impairment:

1. The nature and severity of the Bernice Lieberman's impairment;

2. How long the plaintiff's alleged impairment will last or is expected to last; and

3. The permanent or long-term impact of the plaintiff's alleged impairment.

In addition, you may also consider:

1. The geographical area to which Bernice Lieberman has reasonable access;

2. The number and types of jobs, if any, utilizing similar training, knowledge, skill or abilities, within that geographical area, from which Bernice Lieberman is also disqualified because of the alleged impairment; and

3. The number and types of jobs, if any, not utilizing similar training, knowledge, skills or abilities, within that geographical area from which Bernice Lieberman is also disqualified because of the alleged impairment.[37]

You also should consider any devices or medication used by Plaintiff for her impairment. Under the Rehabilitation Act, a person is not disabled if she uses a device or medication that prevents her from being substantially limited in a major life activity. For example, a person with high blood pressure is not disabled if, when she is medicated, her high blood pressure does not substantially limit her in a major life activity. However, a person who uses a device or takes medication is disabled if she is still substantially limited in a major life activity despite using a device or taking medication, or if the device or medication itself substantially limits her in that activity.[38]

---

[37]     3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.34 (citing 29 C.F.R. § 1630.2(j)(3).

[38]     Fed. Civ. Jury Instr. 7th Cir. § 4.04 (2005).

### C.     Qualified Individuals with a Disability

The term **"qualified individuals with a disability"** means an individual with a disability who can perform the "essential job functions" of the employment position that plaintiff Bernice Lieberman held. You should give consideration to, but are not bound by, the Family Court's judgment as to what functions of a job are essential.[39]

Even if Bernice Lieberman is unable to perform her essential job functions today, a person is still a qualified individual with a disability if the Family Court's refusal to reasonably accommodate her resulted in her inability to perform "essential job functions."[40]

### D.     Essential Job Functions

The term **"essential job functions"** means the fundamental job duties of the employment position plaintiff Bernice Lieberman held. The term "essential functions" does not include the marginal functions of the position.

Along with all the other evidence in the case, you may consider the following in determining the essential functions of an employment position:

1. Defendant's judgment as to which functions of the job are essential;

2. Written job descriptions prepared for advertising or used when interviewing applicants for the job;

3. The amount of time spent on the job performing the function in question;

4. The consequences of not requiring the person to perform the function;

5. The terms of a collective bargaining agreement if one exists;

---

[39]     3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.31 (citing 42 U.S.C.A. § 12111(8)).

[40]     *Norman v. Univ. of Pittsburgh*, 2002 WL 32194730, at *9 (W.D. Pa. Sept. 17, 2004) ("A reasonable jury could conclude that the change in her status from a qualified individual with a disability who was able to work with an accommodation to an individual who was totally disabled (if such a change occurred) was precipitated by Defendants' failure to accommodate her disability.").

6. The work experience of persons who have held the job; and

7. The current work experience of persons in similar jobs.[41]

### E.    Major Activities of Life

**"Major activities of life"** include such activities as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working. An impairment that limits the "major life activity" of working must significantly restrict the plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.[42]

### F.    Reasonable Accommodation

The term **"reasonable accommodation"** means making modifications to the work place that allows a person with a disability to perform the essential functions of the job or allows a person with a disability to enjoy the same benefits and privileges as an employee without a disability. [43] A reasonable accommodation may include job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.[44]

The term "reasonable accommodation" does not include efforts that would cause an undue

---

[41]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.33 (citing 29 C.F.R. § 1630.2(n) (other citation omitted)).

[42]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.35.

[43]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.39 (citing 42 U.S.C.A. § 12111(9) & 29 C.F.R. § 1630.2(o)).

[44]    42 U.S.C.A. § 12111(9).

hardship on the Family Court.[45]

### G. Undue Hardship

The term **"undue hardship"** means action requiring the Family Court to incur significant expense or undergo significant difficulty when considered in light of the following:

One: The nature and net cost of the accommodation;

Two: The overall financial resources of the Family Court and the number of persons employed by the Family Court; and

Three: The type of defendant's business, including the composition, structure, and functions of the Family Court's workforce.[46]

### H. Adverse Employment Decision

The term "adverse employment decision" may include refusing to make reasonable accommodations for a plaintiff's disabilities.[47] Additionally, a supervisor recommending termination may also amount to an "adverse employment decision."[48]

---

[45]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.39 (citing 42 U.S.C.A. § 12111(9) & 29 C.F.R. § 1630.2(o)).

[46]    3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.40 (citing 42 U.S.C.A. § 12111(10) & C.F.R. § 1630.2(p)).

[47]    *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004).

[48]    *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) ("In addition, Seminoff's recommendation not to retain Abramson would also qualify as an adverse employment action sufficient to meet this element.")*; see also Ryales v. Phoenixville School Dist.*, 177 F. Supp. 2d 391, 396 (E.D. Pa. 2001) (finding that a superintendent's recommendation to the school board that a teacher be terminated amounted to an adverse employment action).

**Defendant's Objection to P-2.10**

Defendant objects as such definition should be part of the instructions themselves as defendant has proposed.

## DAMAGES

## P-3.1 COMPENSATORY DAMAGES

If you find the Family Court discriminated against plaintiff Bernice Lieberman based on her disability, then you must determine an amount that is fair compensation for plaintiff's damages. You may award compensatory damages only for injuries that Bernice Lieberman proves were caused by the defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation-no more and no less.

You may award damages for any pain, suffering or mental anguish that plaintiff Bernice Lieberman experienced as a consequence of the defendant's allegedly unlawful act. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that plaintiff Bernice Lieberman prove the amount of plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. [49]

---

[49]     3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.70 (citing 42 U.S.C.A. § 1981a; *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1121-22 (3d Cir.1988) (other citations omitted)).

**Defendant's Objection to P-3.1**

     This instruction fails to provide for the defense in 42 U.S.C. § 1981a(a)(3).

### D-3.1  COMPENSATORY DAMAGES

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendant's violation of Plaintiff's rights under Section 504 of the Rehabilitation Act.

If you find that the Defendant is liable on the claim, as I have explained it, then you must award Ms. Lieberman sufficient damages to compensate her for any injury proximately caused by the Defendants' conduct. Unless, you find that the Family Court made good faith efforts, in consultation with Ms. Lieberman, to identify and make reasonable accommodations, if possible, that would have provided her with an equally effective opportunity and that would not cause undue hardship to the operation of the Family Court.[50]

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole - that is, to compensate him or her for the damage that she has suffered, if any. A prevailing Plaintiff is entitled to compensatory damages for the emotional pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct. However, you may not consider back pay or interest on back pay as part of compensatory damages.[51]

I remind you that you may award compensatory damages only for injuries that a plaintiff proves were proximately caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered.

In awarding compensatory damages, if you decide to award them, you must be guided by

---

[50]     42 U.S.C. § 1981a(a)(3).

[51]     42 U.S.C. § 1981a(b)(2).

dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guess work.  On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem it appropriate from the facts and circumstances in evidence.

However, if you find that the Family Court has demonstrated good faith efforts to identify and make reasonable accommodations with the plaintiff, even if those efforts were unsuccessful, you may not award any damages.[52]

---

[52]     42 U.S.C. § 1981a; *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751 (3rd Cir. 2004).

**Plaintiff's Objection to D-3.1**

The Defendant appears to misunderstand the purpose of 42 U.S.C.A. 1981a(b)(2).  D-3.1 suggests that Section 1981(b)(2) actually bars recovery for back pay.  To the contrary, that provision actually preserves **full** recovery for back pay.  Counsel proposes that the jury be instructed that "you may not consider back pay or interest on back pay as part of compensatory damages."  However, 42 U.S.C.A. § 1981a(b)(2) does not bar back pay damages. Section 1981a(b)(2) provides that "[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964," 42 U.S.C. § 2000e-5(g)."  The purpose for back pay not being considered "compensatory damages" is so back pay and front pay will not be subject to the damages cap of 42 U.S.C.A. 1981a(b)(3).[53]  Put simply, Section 1981a(b)(2) limits what is defined as "compensatory damages," but it does not eliminate back pay from available damages.

Similarly, the U.S. Supreme Court has found that front pay is not part of the definition of compensatory damages in Section 1981a(b)(2).  Again, this did not result in a plaintiff being barred from seeking a front pay award.  Rather, it resulted in the statutory compensatory damages cap not applying, and a full and complete front pay award being available to the plaintiff.[54]

The final statement of D-3.1 provides: "However, if you find that the Family Court has demonstrated good faith efforts to identify and make reasonable accommodations with the plaintiff, even if those efforts were unsuccessful, you may not award any damages."  Although that language is similar to the language in 42 U.S.C.A. § 1981(a)(3), D-3.1 eliminates some of the key language.  The statute actually provides:

---

[53]    *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499-500 (7th Cir. 2000) (finding that back pay is not a part of "compensatory damages" and, thus, is not limited by the statutory cap).

[54]    *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001).

> In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12112(b)(5)] or regulations implementing section 791 of Title 29, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an *equally effective opportunity* and would not cause an undue hardship on the operation of the business.[55]

D-3.1 conveniently omits the "equally effective opportunity" language.

---

[55]    42 U.S.C.A. § 1981a(3) (emphasis added).

**P-3.2   BACK PAY**

If you determine the Family Court discriminated against plaintiff Bernice Lieberman in terminating plaintiff Bernice Lieberman, then you must determine the amount of damages that defendant's actions have caused plaintiff Bernice Lieberman.

You may award as actual damages an amount that reasonably compensates plaintiff Bernice Lieberman for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that plaintiff Bernice Lieberman would have received had plaintiff Bernice Lieberman not been discriminated against.

You must reduce any award by the amount of the expenses that plaintiff Bernice Lieberman would have incurred in making those earnings.[56]

---

[56]    3C O'Malley et al., *Federal Jury Practice and Instructions* § 172.71.  Although back pay is normally not available to a person who is no longer able to work, that general rule is inapplicable "when the disability would not have occurred but for the employer's discrimination."  *Sowers v. Kemira, Inc.*, 701 F. Supp. 809 (S.D. Ga. 1988) (citing *White v. Carolina Paperboard Corp.,* 564 F.2d 1073, 1091 (4th Cir.1977)).

**Defendant's Objection to P-3.2**

The present record is devoid of any evidence that would support any claim for back or front pay by plaintiff.   The undisputed evidence is that plaintiff when faced with possible discipline for repeated tardiness, voluntarily applied for and received both a State disability pension and a Social Security Disability pension.  Moreover, the undisputed record is that plaintiff has never attempted to mitigate by seeking employment anywhere.[57]  The instruction does not provide an off-set for the amounts of disability she has received these tens years.

---

[57]     *Ford Motor Company v. EEOC*, 458 U.S. 219, 233-234 (1982); *Caulfield v. The Center Area School District,* 133 Fed.Appx. 4 (3rd Cir. 2005).

**P-3.3   FRONT PAY**

You must also calculate separately, as future damages, a monetary amount equal to the present value of the wages and benefits that plaintiff Bernice Lieberman would have earned had plaintiff Bernice Lieberman not been terminated for the period from the date of your verdict until the date when plaintiff Bernice Lieberman would have voluntarily resigned or obtained other employment.

You must also reduce any award to its present value by considering the interest that plaintiff Bernice Lieberman could earn on the amount of the award if plaintiff had made a relatively risk-free investment.  The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to plaintiff Bernice Lieberman if she receives it today than if she received it in the future, when she would otherwise have earned it.  It is more valuable because plaintiff Bernice Lieberman can earn interest on it for the period of time between the date of the award and the date plaintiff would have earned the money.  Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that plaintiff Bernice Lieberman can earn on that amount in the future.[58]

---

[58]     3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.72 (citing *Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 832 (3d Cir.1994) (other citations omitted)).

**Defendant's Objection to P-3.3**

      Please see objection P-3.2.

**D-3.4  DUTY TO MITIGATE  (to be given if the Court instructs as to back pay or front pay)**

You are instructed that any person such as the plaintiff who claims now claims lost back pay [and front pay] damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages - that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find by a preponderance of the evidence that Ms. Lieberman failed to seek out or take advantage of opportunities to be reemployed that were available under all the circumstances shown by the evidence, then any back-pay award should be cut-off or reduced beginning at the time of plaintiff's failure to mitigate and deny any front-pay award.

If you find that Ms. Lieberman has made no effort to return to employment and has withdrawn completely from the job market, you should deny her any recovery.[59]

---

[59]     *Ford Motor Company v. EEOC,* 458 U.S. 219, 233-234 (1982); *Caulfield v. The Center Area School District,* 133 Fed.Appx. 4 (3rd Cir. 2005).

**Plaintiff's Objection to D-3.4**

Because her disability had intensified due to the State's failure to accommodate, Bernice Lieberman was unable to take a different job after she suffered an adverse employment decision. The Family Court should not be able to benefit from its own wrongful discrimination by reducing its damages award.  Accordingly, Plaintiff objects to D-3.4 in its entirety.

Alternatively, if the Court determines a mitigation instruction is appropriate, D-3.4 must be altered from its present form.  D-3.4 inadequately explains the duty to mitigate.  Although a "plaintiff is obligated to mitigate damages by seeking comparable alternate employment through the exercise of reasonable diligence," D-3.4 fails to explain that "[i]t is the *defendant's burden* to prove lack of such diligence when requesting that the Court not award backpay for any period." *Huegel v. Tisch*, 683 F. Supp. 123, 125 (E.D. Pa. 1988) (citing *Nord v. U.S. Steel Corp.*, 758 F.2d 1462 (11th Cir.1985)).  D-3.4 is presently silent as to the Defendant's burden.

If the Court finds that a mitigation instruction is necessary, it should read as follows:

If the defendant proves by a preponderance of the evidence that plaintiff unjustifiably failed to take a new job of like kind, status and pay which was available to plaintiff, or failed to make reasonable efforts to find a new job, you should subtract from these damages any amount plaintiff could have earned in a new job after the discharge.

The plaintiff's damages also include front pay, that is, the loss of future wages and employee benefits from the defendant.

You must deduct from any front pay any wages or other earnings and employee benefits plaintiff would receive after the date of trial using reasonable mitigation efforts.[60]

---

[60]     3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.70 (quoting Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 12.3.1 (1997)).

**CASE-SPECIFIC EVIDENCE INSTRUCTIONS**

**P-4.1 ADVERSE INFERENCE**

If a party destroys or otherwise fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who destroyed the evidence.[61]

---

[61]    *See* 3C O'Malley et al., *Federal Jury Practice and Instruction*s § 172.72; *In re Wechsler*, 121 F. Supp. 2d 404, 427 (D. Del. 2000) (finding that the "court has the inherent power to impose sanctions against a party that has destroyed evidence which is relevant to a legal proceeding" and that an adverse interest instruction is the least severe of these sanctions); *see also Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994) (explaining rationale for adverse inference instruction).

**Defendant's Objection to P-4.1**

Defendant opposes Plaintiff's spoliation instruction, as there is no basis in the record or the relevant law.

**D-4.2 LIMITATION IN THE USE OF EVIDENCE**

You may hear evidence regarding events that occurred prior to October 22, 1994. This evidence may be considered by you for the limited purpose of understanding the background for subsequent matters that you are to decide. You should not consider such as evidence as supporting plaintiff's pending claims.

**Plaintiff's Objection to D-4.2**

Events that occurred prior to October 22, 1994, are relevant to this Bernice Lieberman's Rehabilitation Act Claims, and Defendant offers no authority or rationale as to why those events should not be considered.  Unless there is a basis to exclude evidence, relevant evidence is admissible.

**DELIBERATIONS**

**J-5.1  JURY'S DELIBERATIONS**

How you conduct your deliberations is up to you.  But I would like to suggest that you discuss the issues fully, with each of you having a fair opportunity to express your views, before committing to a particular position.  You have a duty to consult with one another with an open mind and to deliberate with a view toward reaching a verdict.  Each of you should decide the case for yourself, but only after impartially considering the evidence with your fellow jurors.  You should not surrender your own opinion or defer to the opinions of your fellow jurors for the mere purpose of returning a verdict, but you should not hesitate to reexamine your own view and change your opinion if you are persuaded by another view.

Your verdict, whatever it is, must be unanimous.

**J-5.2  CURATIVE INSTRUCTION**

I have read to you a long and lengthy set of instructions.  Although the instructions are somewhat complex, they are intended to be considered as an entire unit.  For that reason, you should not choose one or more parts of these instructions and attempt to give them greater weight than any other part.  You should try, to the extent that you are able, to follow the instructions as an entire body of law explained to you by the Court.  The fact that some particular point may be covered in these instructions more than another point should not be regarded as meaning that I intend to emphasize any point.  The Court is absolutely impartial in this case and it is not intended, and I do not now intend, to give emphasis to any point or to express an opinion in any way concerning the outcome of this case.

I have given instructions that refer to injuries which the plaintiff alleges she sustained and there have been instructions on the question of damages.

The fact that I have instructed you as to the proper measures of damages should not be considered as intimating any view of mine about whether or not the plaintiff is entitled to such damages.  Instructions as to the measure of damages are given for your guidance only in the event that you should find from a preponderance of the evidence in the case that plaintiff is entitled to such damages.

If you find from the evidence that plaintiff is not entitled to recover, then you will find for defendants and no damages will be awarded.  On the other hand, if you find for plaintiff, you will then give consideration to the evidence on the points of injuries and damages, if there have been any, and award such damages as may be reasonable and proper, giving careful and due consideration to all the evidence presented in this case.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

/s/ Edward M. McNally
Edward M. McNally (#614)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
(302) 888-6800
emcnally@morrisjames.com
Attorney for Plaintiff Elberta Bernice Lieberman

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski (#2616)
Ilona M. Kirshon (#3705)
Carvel State Office Building
820 North French Street
Wilmington, DE  19801
(302) 577-8324
Marc.Niedzielski@state.de.us
Attorneys for Defendants

61